(No. 26417.—

JAMES DAVEN *et al.* Appellants, *vs.* LEO J. DOWNEY *et al.* Appellees.

*Opinion filed Nov. 24, 1941—Rehearing denied January 15, 1942.*

Wilson, J., dissenting.

Dixon, Devine, Bracken & Dixon, John P. Devine, Robert L. Bracken, and J. C. Ryan, of counsel,) for appellants.

Warner & Warner, (Henry C. Warner, of counsel,) for appellees.

Mr. Justice Smith delivered the opinion of the court:

This is a suit brought by appellants, James Daven and Mary A. Daven, his wife, against appellees, Leo J. Downey and Ann Downey, his wife. The purpose of the suit was to enforce the performance of an alleged contract in which it is claimed that appellee Leo J. Downey agreed to reconvey to appellants 320 acres of land located in Lee county, Illinois. The court below entered a decree dismissing the complaint for want of equity.

Appellants rely upon a written contract, or memorandum, which they claim was executed by appellee Leo J. Downey on October 24, 1936. Appellees claim that no such contract or memorandum was ever made or in existence.

The first question presented by the record in this case is, therefore, whether such a contract or memorandum was made or executed. Inasmuch as there is a sharp conflict in the testimony on this question, it becomes necessary to examine the evidence in the record, as well as the circumstances surrounding the parties, in detail. Appellant James Daven at the time of the trial, was eighty-five years of age. His eyesight was greatly impaired. Appellee Leo J. Dow-

ney was his nephew. He was about forty-eight years of age. The undisputed facts in the record show that in 1935 appellant James Daven was the owner of the 320 acres of land in controversy. At that time he was indebted on a note to the First State Bank of Ohio, Illinois, on which there was due approximately $3791. He was also indebted to appellee Leo J. Downey on a note in the sum of $690, with approximately two years' accrued interest. He also owed certain obligations to others. In 1935, the First State Bank of Ohio was in liquidation. The receiver of that bank obtained a judgment on the note of appellant James Daven in the circuit court of Bureau county. The amount of the judgment and costs was something over $4000. A transcript of that judgment was filed in the office of the circuit clerk of Lee county. An execution was issued under which the sheriff of Lee county sold the land. It was bid in by the receiver of the First State Bank of Ohio, the execution creditor. The record shows that during the period of redemption following this sale, appellant James Daven made repeated efforts to raise funds with which to redeem the land but was unsuccessful. At one time he offered the land for sale at public auction, with the result that there were no bidders who would pay the amount of the judgment. At the expiration of the period of redemption a deed was made by the sheriff conveying the land to Charles H. Albers, as receiver of the First State Bank of Ohio. The record indicates that after this deed was made the receiver was willing to reconvey the land to James Daven upon payment of the amount of the judgment, interest and cost, possibly less. Some negotiations were had between the deputy receiver of the bank and James Daven, with a view to working out some plan by which the receiver would accept a reduction in the amount due the bank and reconvey the premises to Daven. These negotiations were unsuccessful until the latter part of September, or early in October, 1936. Up to this time there is no substantial disagreement between

the parties as to the facts. From this point on, however, there is a wide difference between the contentions of the parties as to what occurred between them.

Appellant James Daven testified that during his negotiations with the receiver of the bank for the payment of his debt and the reconveyance of the property, he had a conversation with his nephew, appellee Leo J. Downey, in which he stated, in substance, to Downey, that the receiver of the bank had agreed to settle the bank's claim for $4000; that appellee Leo J. Downey agreed that if appellant Mary A. Daven would release an old mortgage for $500 which she held on one of the 40-acre tracts of the land involved, and would sign over her dower rights in the premises, he would advance the $4000 to pay the bank's claim; that he would take title, hold the land for two or three years, or until prices advanced, and would then sell it; that Downey would take what money he had put into it, together with the amount appellant James Daven owed him on the note, signed by Daven, amounting to $690 and interest, and turn over the balance for which the property sold to Daven. James Daven further testified that thereafter he and Leo J. Downey met at the office of the bank receiver for the purpose of closing the transaction. There is no dispute between the parties as to this meeting and the purpose for which they met. There were present at this meeting James Daven and Mary A. Daven, appellants; Leo J. Downey, appellee; D. W. Grant, now deceased, who was the deputy receiver in charge of this particular property and the transaction concerning the same; Paul D. Perona, an attorney representing the bank receiver; Leona Fenoglio, whose name was then Troy, a stenographer employed by the bank receiver; A. W. Hedrick, who was assisting deputy receiver Grant in liquidating the bank, and Oliver J. Gehant. Gehant was connected with a bank in West Brooklyn. Gehant was there for the purpose of making a loan of $4000 to Downey to enable him to pay the claim

of the bank. The record further shows that during these negotiations attorney Skinner was present for a short time. He was called at the request of appellants and, apparently, advised with them briefly with reference to the proposed transaction. As to everything else that occurred at that time there is an irreconcilable conflict in the testimony.

James Daven testified that he and his wife objected to making a quitclaim deed to appellee Leo J. Downey for the land unless he would agree to hold the land until it could be sold for enough to repay Downey the money he would have to invest in it, together with the note and interest owing to him by James Daven; that Mary A. Daven held the $500 mortgage on the one 40-acre tract of the land which Downey demanded she release; that she refused to release this mortgage until Leo J. Downey would enter into a contract as suggested. James Daven further testified that Downey agreed to these demands and that Paul Perona dictated a contract or memorandum to Mrs. Fenoglio, the stenographer; that the contract or memorandum was written by her and was signed by Leo J. Downey after it was prepared; that the question was asked: "Who will keep this agreement?" That Downey suggested, "Well, Mr. Gehant is going to have the rest of the papers, better give it to him."

Paul D. Perona, an attorney of more than fifteen years standing, testified that he was present at this meeting. He was the attorney for the bank receiver. He had negotiated with both Daven and Downey about the payment of the bank's claim and the reconveyance of the property upon payment, or settlement of that claim. He testified that Daven and Downey talked about getting the farm back at that meeting. He further testified that prior to the date of this meeting he had negotiated with James Daven and Leo J. Downey in regard to the settlement of the claim of the receiver of the bank; that the witness and the then deputy receiver of the bank had agreed to accept $4000 in

full satisfaction of the claim; that James Daven paid $100 of the $4000 demanded, to the deputy receiver; that on October 24, 1936, the day on which the matter was closed, during the discussion Skinner was called in by appellants and talked with them; that Downey finally agreed to put up the $4000 necessary to satisfy the bank's claim; that Daven and Mrs. Daven did not want to sign her dower rights away unless they had an opportunity to buy the land back from Downey for the amount he put in it; that after some further discussion Downey agreed to sell the farm back to James Daven for the money he put into it, plus the money Daven had obtained from time to time, the amount of which Perona did not know. The matter was discussed back and forth by Downey, Daven and Gehant. Daven wanted a contract from Downey agreeing that he would deed the land back to him when Downey had been repaid the money he had invested in it. Perona further testified that he dictated to Mrs. Fenoglio, a contract. The witness understood that Gehant was furnishing the money to Downey. Gehant objected to any contract being placed on record. He gave as his reason that he could not loan money on the land with a contract on record which permitted appellants to buy the farm back. This witness further testified that the contract he dictated to the stenographer provided that Daven and his wife would have a right to buy the farm back for the amount Downey put into it; that the contract was not to be recorded; that it was provided in the contract that if it was recorded it would be null and void. He further testified that they then discussed the question of what should be done with the contract. He stated positively that Downey signed the contract in his presence, in the presence of the stenographer and the presence of Grant, the deputy receiver. He further testified that after the contract was signed by Downey it was turned over to Gehant with other papers that were made that day. A petition was filed by the witness, as

attorney for the receiver, for the purpose of obtaining the necessary order of court approving the acts of the receiver and ordering the property conveyed to Downey; that, thereafter, a deed was executed by the receiver of the bank and delivered to Downey. He was positive that he did prepare the contract, in substance, as above stated. He did not recall whether Daven signed the contract, but stated that it was more of a memorandum from Downey to Daven that he would sell the farm back for the amount he had coming plus the amount he had paid the receiver. He further testified that there was only one copy signed; that the witness gave the contract, or memorandum, to Gehant after it was signed. Perona further testified that sometime after this transaction was consummated, when the matter came up he made a trip to West Brooklyn trying to locate the contract; that Grant, the deputy receiver, was with him on that trip. He did not remember that they were able to see Gehant but later Gehant wrote him a letter in which he told him that he did not have the contract.

Leona Fenoglio testified that she was employed by the deputy receiver and was present at the time of this transaction. She further testified that Perona dictated the contract to her at that time. She did not undertake to recite its contents but said it was something about this judgment held by the bank, but she did not remember the details; that there was something in it to the effect that Daven might buy his farm back. She further testified that there was no one present in the room when Perona dictated the contract; that they were in a separate room from that in which the other parties were congregated; she did not know whether the contract or memorandum was signed, but stated that it was dictated to her about 11:30 o'clock in the forenoon and written by her.

Against this evidence appellants offered the testimony of Leo J. Downey and Oliver L. Gehant. Downey emphatically testified that no such contract was ever made

or signed by him. He testified that James Daven came to see him in Chicago in September, 1936; that in the conversation between them, Daven stated that he had not been able to sell the farm and further stated: "If you want to save the money I owe you, the best thing you can do is buy the place." He testified that in response to this he stated that he would not pay the judgments that were against it, because it was not worth it. He further testified that he stated to Daven in that conversation that if, after the redemption period expired, he could get a cut from the receiver he would consider it. He further testified that Daven at that time owed him $690 with two years' unpaid interest, for which he held Daven's note. His version of the transaction on October 24, 1936, is that Gehant was present and was emphatic in his statements that he would not make a loan to Downey on the land unless there were "no strings attached" to it; that he agreed to let James Daven have the rent off the place for that year and cancel the note of James Daven held by him, if appellants would sign away their dower; that he never at any time made any agreement of any kind to reconvey the property to Daven and never signed any such agreement; that no such agreement was drawn at that time or at any other time; that he did pay the $4000 to the receiver of the bank and the land was deeded to him; that appellants at that time executed a quitclaim deed conveying the property to Downey; that James Daven did receive the rents for the year 1936, and that Downey collected the rents thereafter.

Gehant testified that he was present at the time of the transaction; that he was furnishing the $4000 to Leo J. Downey with which to purchase the claim of the bank; that the conference lasted from 11:00 o'clock in the forenoon until 4:00 o'clock in the afternoon; that this delay was brought about by the fact that appellants wanted "strings attached" to the transaction; that he would not agree to any such "strings" being attached; that there was not to be any understanding as to reconveyance or any

agreement made as to any further consideration between Downey and appellants. He further testified that he did not know of any contract for reconveyance being agreed upon that day, or any contract in writing being made between Downey and appellants. He further testified that it was agreed between appellants and Downey that the 1936 crops were to be given to James Daven in consideration that appellants would execute a quitclaim deed and release the old mortgage. He further testified that he did not make the statements attributed to him by Paul D. Perona about not recording the contract; that he insisted through the entire proceedings that there could not be any contract for reconveyance or reassignment if he was to furnish the money. He further testified that at that time it was his intention to loan Downey the money and take a mortgage on the land as security, but that he thereafter made the loan to Downey on personal security and did not require him to give a mortgage on the land.

The only other witness examined was A. W. Hedrick. He was assisting Grant, the deputy receiver, in liquidating the bank. He was familiar with the land and was present at the time of the transaction in question. He was unable to state any specific conversation that was had in this conference. He testified that Gehant was there for the purpose of protecting his own interest—to see that the property was clear when the loan was made by him. When asked about the contract in dispute and the conversation leading up to it, he stated that: "It is possible that there was such a conversation." He further testified that there were two rooms in the office and that during a part of the time he was not in the room where most of the parties were. Mrs. Daven was ill at the time of the trial and was unable to appear as a witness. As to the rent from the farm for the year 1936, James Daven testified that it was agreed between him and Downey that he should have the rent on condition that he pay the taxes for that year. The record does not show whether Downey cancelled the in-

debtedness owing to him by James Daven, or whether he ever surrendered the note. He was not asked anything about this while he was on the witness stand.

The above statement of the testimony in detail has seemed necessary because of the conclusions which we have reached. We are not unmindful of the rule that a chancellor's finding of facts on conflicting evidence will not be disturbed unless the decree is clearly against the manifest weight of the evidence. In all cases the finding of facts by the chancellor, who saw the witnesses and heard them testify, should be given due weight and consideration. But the rule is equally well settled that when it appears from a consideration of the entire record that the evidence does not justify the decree, it is the plain duty of this court to reverse it. (*Durbin* v. *Carter Oil Co.* 378 Ill. 32; *Johnson* v. *Lane,* 369 id. 135; *Decker* v. *Decker,* 324 id. 457; *Nofftz* v. *Nofftz,* 290 id. 36.) The decree in this case finding the equities in favor of appellees, and dismissing the complaint for want of equity is tantamount to a finding that appellants did not prove an agreement by Leo J. Downey to reconvey the premises to James Daven, as alleged in the complaint. We cannot concur in this finding. That such a contract was made does not rest upon the uncorroborated testimony of James Daven. He was fully corroborated by the testimony of Paul Perona who was a wholly disinterested witness. Perona testified positively that such a contract was dictated by him; that it was written by Leona Fenoglio; that it was signed by Leo J. Downey and delivered to Gehant. Sometime thereafter he accompanied Grant, the deputy receiver, from Spring Valley to West Brooklyn to see Gehant, in an effort to locate the contract. Apparently this was after some question had been raised by someone as to the existence of the contract. It seems highly improbable that both Grant and Perona would be making such efforts to locate a contract which they claimed was made in their presence if no such contract had, in fact, been made. It is also significant that they

went to Gehant for that purpose. Perona is corroborated to the extent that he dictated a contract and that it was written by Mrs. Fenoglio, by her. She, too, was a wholly disinterested witness. Not only do we find this positive corroboration but the record contains many other facts and circumstances tending to support the contentions of appellants. It is true that Downey denies that any such agreement was made, or any contract or memorandum written or signed by him. The purpose of the meeting on October 24, 1936, shows that appellants were trying to save something out of the farm. Downey and all the witnesses who were present and who testified for him admit that appellants were demanding such an agreement from Downey. They were so insistent in their demands that they prolonged the meeting from 11:00 o'clock in the morning until 4:00 o'clock in the afternoon. All the witnesses agreed that the principal subject of discussion at that meeting was appellant's demands for such a contract. Downey testified to this and so did Gehant. Gehant also denied that any contract for the reconveyance of the land was made. He admitted, however, that such contract was discussed throughout this prolonged session. As he expressed it, appellants wanted "strings attached" to the transaction with Downey. Gehant seems to have been the prime mover against Downey making such an agreement. His explanation was that he would not make a loan to Downey on the property if an agreement to reconvey the land was on record or outstanding. If we accept the testimony of Paul Perona as true, and no reason appears in the record why we should not do so, the objections of Gehant were taken care of and obviated by making only one copy of the memorandum and providing therein that it should be void if it were recorded. Then, as a further assurance to Gehant, the memorandum was delivered to him by Paul Perona. The record shows that it was left in his custody. This obviously met and obviated every objection which Gehant had advanced against Downey making the contract. It

cannot be said that Gehant was a wholly disinterested witness; he took an active part in the transaction; he intended to loan Downey $4000 on the land. As he expressed it, he feared that if such a contract was made it would affect the title to his security for the loan. He later changed his mind, however, and obtained from Downey other satisfactory security for the payment of the debt. Upon the record in this case, it is not improbable that he changed his mind and demanded and received other security because he knew the contract was made and the memorandum signed by Downey and was still of the opinion it might affect the title to the land as security for the loan made by him.

Whether the contract was made depends solely upon the testimony of James Daven, Paul Perona and Leona Fenoglio on the one side, and that of Leo J. Downey and Gehant on the other. The witness Hedrick gave no testimony of any value on this subject. Unfortunately, Grant, the deputy receiver, who handled the transaction for the bank, died before the trial in the circuit court. In order to accept the testimony of Downey and Gehant on this controverted question, we would be compelled to disregard entirely not only the testimony of James Daven, but the testimony of Paul Perona and Leona Fenoglio, both of whom were wholly disinterested witnesses and whose testimony appears to have been fairly and truthfully given. This we cannot do. There was no attempt to prove that Mrs. Daven received any consideration for the release of her dower other than the contract to reconvey the land. She was not a party to the note on which the judgment was taken. The sale under the execution in nowise affected her dower rights in the land. Downey could not get good title to the property without a conveyance from her.

The decree is against the manifest weight of the evidence and cannot be sustained. It is contended by appellees that appellants failed to prove a tender of performance

and an offer to pay the amount due appellee Leo J. Downey and that the decree should be affirmed for that reason. Downey denied the existence of any agreement and the signing of any contract or memorandum. He cannot now be heard to say that appellants did not comply with the contract which he swears never was in existence. Where a party, obligated by a contract, denies the existence of such contract, it is not necessary for the other party to the contract to show a tender by him. (*Gillespie* v. *Fulton Oil and Gas Co.* 236 Ill. 188; *Dulin* v. *Prince,* 124 id. 76.) Equity will not require the doing of a useless act. The rule is, further, that where a tender of performance has been prevented by the action of the party to whom the tender should be made, that party cannot take advantage of the failure to make a tender. (*Neil* v. *Kennedy,* 319 Ill. 75.) Appellees, having denied the existence of the contract, cannot now invoke the failure of appellants to make a tender, in defense of an action by appellants to compel its performance.

It is shown by the manifest weight of the evidence that it was the intention and agreement of the parties that the land was conveyed to Leo J. Downey, as security for the $690-note and the advancements made by him, for the benefit of appellants. Such conveyance was in equity only a mortgage. (Ill. Rev. Stat. 1941, chap. 95, par. 13.) Leo J. Downey held title to the land as security for the repayment of the $4000 advanced by him for the purchase of the claim of the bank and for the payment of the promissory note which James Daven owed to him. As between the parties, Downey took no other or different interest therein. The conveyance by appellees of the land to a third party, and his reconveyance to them as joint tenants, in nowise affected the rights of appellants. These conveyances were wholly gratuitous.

As a part of the relief prayed for in the complaint, appellants asked for an accounting by Leo J. Downey of the

rents, issues and profits arising from the land. At the close of the evidence in the case, appellants expressly waived all claim to the right to have an accounting. This waiver is in the record and binding on appellants in this court.

The decree of the circuit court of Lee county is reversed. The cause is remanded to that court with directions to enter a decree in favor of appellants and against appellees, as prayed for in the original complaint, except as to an accounting. By such decree appellants shall be given a reasonable time within which to pay to Leo J. Downey the sum of $4000 advanced by him to the receiver of the First State Bank of Ohio on October 24, 1936, with interest on said amount at the rate of five per cent per annum from that date to November 10, 1939, the date on which this suit was filed; that appellants also be required, within the time so fixed by the decree, to pay to Leo J. Downey the amount due on the note signed by James Daven and payable to Leo J. Downey, in the principal sum of $690, with interest thereon to November 10, 1939, according to the tenor and effect of said note; that appellees surrender said note when such payment is made, to appellants; that upon the payment of said sums, or depositing the same with the clerk of said court, the decree vest the title to said lands described in the complaint, in appellants, free from all claims of said First State Bank of Ohio and its receiver, and all claims of appellees, or either of them, and all persons claiming by, under, or through them, or either of them; that thereupon appellees surrender possession of all of said property to appellants; that if the above payments are deposited with the clerk, the same be by him paid over to Leo J. Downey upon his delivery of said cancelled note to the clerk and surrendering possession of said lands to appellants. *Reversed and remanded, with directions.*

Mr. Justice Wilson, dissenting.