In re MICHAEL AUSTIN et al., Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JEFFIE DEAN HARVEY et al., Respondents-Appellees.)

First District (1st Division)    No. 77-1185

Opinion filed June 12, 1978.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Lawrence N. Halperin, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellees.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

This is an appeal by the State from a denial of petitions to have Jeffie Dean Harvey and Jesse Harvey declared unfit as parents. Because this denial was based on an erroneous interpretation of law, we reverse and remand.

On May 9, 1974, the Juvenile Court of Cook County entered a finding of neglect as to Michael Austin, Maurice Austin, Carolyn Austin, Rosemary Austin and Cheryl Austin based on abuse by their parents, the Harveys.

On September 24, 1976, the State filed petitions for supplemental relief alleging that the Harveys were unfit. In a hearing on this petition the State produced three witnesses who testified regarding the Harveys' activities since the time of removal of the children. The first of these witnesses, Irmgard Heyman, described two counseling sessions, one with both parents, the other with Mrs. Harvey alone, and stated her opinion that the couple had made no role change, were unable to establish a plan to live together or accept any counseling or to engage in meaningful conversation with their children during visits allowed them. A second witness, Dr. Blanchard Reeb, a clinical psychologist attached to the juvenile court, offered his conclusions, based on a February 8, 1977,

clinical evaluation interview with the Harveys, and on reports of other agencies and psychiatrists. Among these were the view that the Harveys' relationship was so provocative that anyone in the same relationship would lose control and that their combined difficulties caused an impossible situation for resolving their difficulties. Dr. Reeb recommended that the Austin children be permanently removed from the Harvey home and freed for adoption. The State also called Jesse Harvey to testify that he was, after a separation, living again with his wife.

At the conclusion of the State's case, the court granted a directed finding in favor of the Harveys.

To appreciate the significance of this matter, it is necessary to consider the role of an unfitness hearing under the Adoption Act. Under section 8 of the Act, a child may not be adopted without the consent of his parents unless his parents have been declared unfit persons. Ill. Rev. Stat. 1977, ch. 40, par. 1510.

The definition of an unfit person is set forth in section 1D of the Act. (Ill. Rev. Stat. 1977, ch. 40, par. 1501D.) Accordingly, the State's petition to have the Harveys declared unfit persons was a preliminary step toward making possible their adoption.

At issue here is the validity of the trial court's dismissal of that petition.

■■ For such a petition to be valid, it is necessary that it set forth with particularity the grounds for such a determination (*In re Westland* (1976), 48 Ill. App. 3d 172, 177, 362 N.E.2d 1153, 1157), and these grounds must be supported by clear and convincing evidence (*In re Love* (1977), 50 Ill. App. 3d 1018, 1023, 366 N.E.2d 139, 142).

The grounds alleged by the State in its petition were those contained in subsections (b) and (m) of section 1D. The allegation relating to subsection (b), which provides that a parent may be adjudged unfit for failure to maintain a reasonable degree of interest, concern or responsibility as to a child's welfare, was expressly rejected at trial and is not appealed by the State. Subsection (m), on the other hand, contains two grounds for a determination of unfitness, "[f]ailure to make reasonable efforts to correct the conditions which were the basis for the removal of the child from his parents or to make reasonable progress toward the return of the child to his parents within 12 months" after removal of the child. As to the first of these grounds, the court below expressly found that the efforts of the Harveys, as exemplified by their undergoing counseling, were "reasonable" within the meaning of the statute because, although they were not objectively considerable, they were significant in the light of the Harveys' personal limitations. The State appeals neither the rationale nor the outcome of this finding, so we need

consider it no further. The remaining ground under subsection (m), however, presents issues which are the focus of this case.

First, there is no clear, express finding as to this ground. The following passage includes the language which comes closest to a finding as to this particular ground:

"The court finds no—can make no criticism of the State in filing this petition because there does not appear to have been any substantial progress that the parents have made towards correcting the conditions which caused the removal of their children. The court is convinced of that fact.

The question is, what did the legislature mean when they said reasonable efforts towards—what did they mean when they said reasonable progress towards the return of the children? I construe that to mean reasonable given the limitations of the parents themselves.

I believe that this is a statute which is—which is designed to safeguard the interests of children in having a permanent and—in having the assurance of a permanent home where they have been raised with a guardian due to the neglect of their parents.

And I think the statute obviously is to prevent the child from remaining in guardianship an overly long time where the parents are not sufficiently motivated or interested in trying to correct the conditions which caused the removal of the child.

That being the case, the Court feels that the special disabilities of the parents where such a provision is relied upon must be taken into consideration by this Court in determining whether or not the progress they have made is reasonable.

This is an unusual case. It is apparent to the Court that both parents want the return of their children.

It is apparent to the Court the parents are not ready for the return of their children and it is quite possible that they will never be ready for the return of their children. That is possible, but it is not a certainty.

It is apparent that there is quite a bit of chaos in the relationship of the father and the mother. The father has been in and out of the home. At one time the evidence indicates at one time he felt that it was necessary for him to separate himself from his wife so that the wife could have the children.

It is apparent that that solution is not one the Court can rely upon because the parents are too—apparently are unable to—unwilling or unable to separate.

Under the circumstances, it is not clear to me that in this

particular case that this Court should penalize them for not separating, even though if they were in fact separated to the satisfaction of the Court, it might possibly improve the chances of the mother to some day rehabilitate herself as custodian of these children.

Another important aspect of this case is that it appears that the mother has been sincere in her efforts to, first of all, to visit with the children and also to the satisfaction of the worker and possibly in time the Court, that she is in fact interested in her children and wants them back.

Of course, it appears that her efforts in this regard have not been sufficient, but the Court is not convinced they have not been reasonable given her disability.

Our reviewing courts have consistently held in accordance with the holdings of other reviewing courts throughout the country that the matter of the termination of the parents' rights or the residual parental rights and the freeing of the child for adoption is a very serious matter and it should be only decreed when the evidence is clear and convincing.

The evidence that this—that the State has presented in this case is not clear and convincing to this Court that the parental rights should be terminated.

The Court is not unmindful of the fact that despite the amendment to the statute the ruling today might appear to condemn these children to a childhood spent entirely in a foster home. That of course is not necessarily true because it is possible that at some future date either the parents may, despite the evidence to the contrary, today may in fact be rehabilitated by involving in counseling and by profiting from the counseling.

Although, I must confess, it does not appear as though they are— at least the father—is amenable to such counseling and, of course, the other possibility is that with the passage of time if there are further efforts and further opportunities afforded to the parents to get involved in counseling to rehabilitate themselves and they do not take advantage of that, it is quite possible that the passage of time alone would require a termination of parental rights.

I do not believe that despite the fact that 24 months have passed since the finding of neglect, I do not believe that there has been sufficient time to arrive at such a decision in this case at this time.

Therefore, the supplemental petition at the close of the State's case, the supplemental petition for termination of parental rights will be denied, will be dismissed and the cases will be returned to the guardianship calendar."

This excerpt provides an understanding of the trial court's interpretation of this standard, but does not contain a clear application of this standard to the facts of this case. There is, however, an implied finding as to this standard because a judgment of dismissal is regarded as embodying adverse findings as to each of the grounds asserted by the plaintiff. (See *Paddon v. People's Insurance Co.*, (1883), 107 Ill. 196; *Daven v. Downey* (1941), 378 Ill. 543, 39 N.E.2d 45.) Accordingly, the court below must be regarded as having found that there was no clear and convincing evidence as to this ground.

Before proceeding to consider the adequacy of the evidence relating to this ground, however, we are constrained to address the correctness of the interpretation given by the trial court to the statutory standard.

■■ The court below indicated that, in applying this "reasonable progress" standard, the special disabilities of the parents must be taken into consideration. Moreover, the trial court noted that it is quite possible that these parents will never be ready for the return of their children, that there does not appear to have been any substantial progress towards correcting the conditions that caused removal of the children and that with the passage of more time, if there are no further efforts or progress, the passage of time alone may require termination of parental rights.

These statements, read in their overall context, indicate that the court below applied an improper interpretation of the applicable statutory standard.

First, the court adopted the same subjective approach for determining "reasonable progress" as it applied for determining reasonable efforts. These two standards appearing in subsection (m) are preceded by the first paragraph of subsection D which states "the grounds of such unfitness being any one of the following." This language makes it clear that the two standards set forth in subsection (m) are disjunctive, so that failure to make *either* reasonable efforts *or* reasonable progress constitutes a ground for unfitness. To equate or combine these two standards therefore violates the plain meaning of the statute as well as violating the principle that a statute is to be construed, if possible, so that no word, clause or sentence is rendered superfluous or meaningless. See *Consumers Co. v. Industrial Com.* (1936), 364 Ill. 145, 4 N.E.2d 34; *Illinois Power Co. v. City of Jacksonville* (1960), 18 Ill. 2d 618, 165 N.E.2d 300.

If the ground of failure to make reasonable progress is to have a meaning distinct from that relating to reasonable efforts, the use of the same subjective standard for both is impossible.

The parties to this case have addressed themselves to the meaning of the term "reasonable" in each instance, the defendant arguing persuasively that a word used twice in the same statute is presumed to have the same meaning in each use. (*Lawton v. Sweitzer* (1933), 354 Ill.

620, 189 N.E. 811; *McReynolds v. Civil Service Com.* (1974), 18 Ill. App. 3d 1062, 311 N.E.2d 308.) This discussion, however, ignores the significance of the noun modified in each case. The word "effort" makes the first standard inherently subjective because it does not focus on objective results. In contrast, in determining whether "progress" is reasonable, it is necessary first to determine whether any progress whatever has been made. It would be a distortion of the plain meaning of that word to find that there had been "reasonable progress" where no progress at all had been made.

The construction of this provision has not previously been dealt with in reported decisions, except for one comment that the language of subsection (m) "evidences a legislative recognition of the problem [of children removed from their parents yet ineligible for adoption] and an intention to give greater protection to the best interests of the child." *In re Massey* (1976), 35 Ill. App. 3d 518, 522, 341 N.E.2d 405, 408.

Section 20a of the Adoption Act provides additional guidance:

> "The best interests and welfare of the person to be adopted shall be of paramount consideration in the construction and interpretation of this Act." Ill. Rev. Stat. 1977, ch. 40, par. 1525.

■■ Accordingly, the term "reasonable progress" requires at a minimum measurable or demonstrable movement toward the goal of return of the child. Whether a small amount of progress is "reasonable" must be determined with proper regard for the best interests of the child. Such an inquiry might well involve consideration of the limitations of the parents, but also would necessarily require consideration of the possibility that the child might be forced to indefinitely reside with a succession of impermanent foster parents. Reasonableness may also depend on the situation which led to removal of the children, since slight progress in correcting a situation which was relatively mild could be viewed as more satisfactory than the same degree of progress in correcting a situation that greatly endangered a child.

■■ In this connection, the record of the prior proceedings for removal of the child are indispensable. In an unfitness hearing, testimony may well cover the current status of the parents and their activities since removal of the children, but the best evidence of the conditions which compelled removal of the children is that prior record. Because it is impossible to measure progress without referring to a prior status, current status and the process by which movement from the one status to the other occurred, absence of evidence regarding the prior status would render a determination of "reasonable progress" meaningless. In this appeal the State has moved to supplement the record of the unfitness hearing below with excerpts from the record of the earlier removal hearing. The respondents have objected, arguing that the sole purpose such a record

could serve would be to prejudice the reviewing court. The motion to supplement the record is granted because, contrary to respondents' argument, this record is essential to gauging the progress these parents have made, not only at trial (see *In re Robertson* (1977), 45 Ill. App. 3d 148, 359 N.E.2d 491), but also for purposes of review.

■■ A second error in interpretation of subsection (m), possibly intertwined with the preceding error, lies in the trial court's statements regarding the passage of time in this case. To the extent that these statements import that the possibility of future events is relevant to a determination under subsection (m), they are in conflict with the clear meaning of that statute. Subsection (m) provides that a person may be declared an unfit parent for failure to make "reasonable efforts" or "reasonable progress" within 12 months of removal of the children. This time period is a reduction of the former time period of 24 months (see P.A. 80-558, eff. Oct. 1, 1977), and clearly manifests the intention of the legislature that determinations of unfitness under this subsection be made as soon as possible so that children will not be left for an unnecessarily long time in an impermanent home. Accordingly, it would be error to either delay such a determination so that further time could pass or rule that failure to make reasonable progress had not been shown because no evidence had been presented showing that there would be none at some future time. In the present case more than 35 months had elapsed between the removal of the Harveys' children and the hearing on their unfitness, nearly three times the period now provided by statute for demonstrating efforts and progress.

There can be no doubt that this erroneous interpretation affected the outcome of the hearing on unfitness. The evidence introduced by the State's witnesses regarding the present status of the Harveys' home life and their activities since the children were taken from them was clearly sufficient to establish a *prima facie* case of failure to make reasonable progress toward return of their children. Accordingly, this ground for the petition was properly before the court, and the court's erroneous representation of the standard to be applied under this ground renders its determination that the State's evidence was not clear and convincing as to this ground fatally defective.

In view of this error of law affecting this judgment entered at the close of the State's case, we are compelled to reverse the judgment and remand the case for proceedings as though the motion for a directed finding had been denied, pursuant to Supreme Court Rule 366(b)(3)(iii). 58 Ill. 2d R. 366(b)(3)(iii).

Reversed and remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.