Caton, J. With, the view we are disposed to take of this case, it is a matter of no moment whether the parties were partners prior to the execution of the agreement of the 18th of December, 1848, or not. Whatever else may be said of that agreement, we think it clear that the partnership, admitting that one had existed, was by that agreement dissolved, and the interest of Stout in the assets of the concern, were transferred to Whitney. That agreement is far from being skilfully drawn, and objections may be raised to any construction which may be given t. This is another of the thousand instances, which are constantly occurring, where the parties, during a negotiation, probably arrive at a perfect understanding, and then, when they come to reduce their agreement to writing, only express some of the leading features of their understanding, and those only in an imperfect and inconsistant manner, not reflecting that others igno- ■ rant of the detail of the matters about which they are negotiating, would have difficulty in perceiving what, to their own minds, was ■ perfectly apparent. In such cases something must necessarily be intended, but above all it is indispensably necessary, in order • to arrive at their meaning, that we should place ourselves as far as possible in the position of the parties, when they made the contract, by possessing ourselves of the circumstances which they had in their view during the negotiation. When, as in this case,., the construction is to be given to the instrument, as it appears in the declaration, we must look .alone to those circumstances, as there recited or averred, for assistance in arriving at the meaning of the instrument. If those circumstances are improperly or imperfectly stated in the declaration, the other party cannot demur, and then suggest, that other circumstances may exist, which if true, would show that the parties had something else in view, and meant to express a different meaning from that which would be understood, in view of the facts stated in the declaration. It is for the defendant to show the existence of those circumstances, in contemplation of which, the parties made the contract, and which might serve to show what they meant. Here the question being raised by a demurrer, the contract must now be construed in the light presented in this declaration. ■ According to the declaration, the circumstances in view of, and about which, this contract was made, are, that in the March previous, the parties had,—if you please,—entered into partnership, by the terms of which, the plaintiff was to furnish a store and a stock of goods, and the defendant was to sell the goods, and that the profits should be equally divided between them. In pursuance of that agreement the plaintiff furnished goods, some from his store near Stimpson’s Mills, and others purchased and forwarded from St. Louis. A portion of these goods had been sold by the defendant, for which, various notes, book accounts and demands were due the concern, and a remnant of the goods still remained unsold. Previous to the time when the contract was made, the defendant had become security with the plaintiff on certain notes which were yet unpaid. In view of these circumstances, the contract was made. And now, what was the character of that contract, and what its object ? Beyond all doubt, it was a contract of bargain and sale ; and if we can ascertain what was intended to be sold, what the measure of compensation, and how payment was to be made, we shall then have arrived at the intention of the parties. This contract, in its recital, after alluding to the existence of the original agreement, states that Stout had furnished to Whitney various kinds of goods, and that Stout was “ desirous of selling to Whitney all the goods now on hand including all book accounts, notes, and all dues due the concern, of every nature and character, on account of said 'goods or store in Lima; have this day bargained and sold, and do by these presents sell to said Whitney on the following terms, to wit, &c.” Now what was sold, the granting part of the contract does not state, and yet we cannot doubt that Stout intended to sell what is attempted to be described in the previous recital. In that recital it is manifest that the parties did not understand the value and meaning of some of the words used, and but for the explanation which they have given, we should never have thought that the parties understood, that the word goods included choses in action. This very sentence shows how unsafe it would be to adhere to the literal meaning of the words of the contract, in order to ascertain the intentions of the parties, when it is manifest they did not understand the true value of the words they used. We must as far as possible, make the parties their own interpreters, and allow one part of the contract to explain another part, as far as possible. Here, by the subsequent words, we see the parties have attempted to explain what they meant by the use of the word goods, and yet I think it subsequently appears, that they were equally ignorant of the meaning of the words used in explanation. It was doubtless the intention of the parties to express in this recital the subject matter of the sale, but they have failed in doing so. I am of opinion that they intended to embrace in this sale, not only all of Stout’s present interest in all of the assets of the concern, but also all interest which he ever had in the goods or their proceeds. That they intended to place themselves and their relative rights and liabilities, in precisely the same condition that they then would have been in, had no partnership or mutual interests ever existed. That they intended to occupy the same position which they would have occupied, had Whitney originally purchased the goods of Stout. That they intended by the new contract to 'supercede the partnership arrangement—to set aside all that had been done under it, and to create new rights and liabilities, precisely of the character which would then have existed, had a contract of sale been made of the goods at the time they were delivered, with the amount to be paid for them, and mode of payment, precisely as is stipulated in this contract. This I think is manifest from what immediately succeeds the part above quoted, which is as follows: “The said Whitney is to have the first lot of goods furnished by said Stout out of his former store near Stimpson’s Mill, at cost, after making reasonable deduction on articles over charged in bill rendered; and on all goods laid in and purchased in St. Louis for said Lima store. And said Whitney agrees to pay said Stout the original cost, and five per cent, on each dollar so purchased.” How this, while it serves to fix the measure of compensation, to be paid for the purchase, also serves to show, more satifactorily than any other part of the contract, the nature of the transaction, and the character and extent of the sale. They say Whitney is to have the first lot of goods furnished from Stout’s store, on certain terms, and the goods purchased in St. Louis on certain other terms. It is true that he could not presently have those goods, for he had already had those goods, many of them had been disposed of, but still the mode of expression is not very inaccurate, and certainly not very uncommon, for the purpose of changing the terms of a transaction, which had originally been settled upon differently, or for the purpose of fixing the terms of a transaction, which had not previously been defined. Thus if one party furnishes goods to another, either with or without specified terms, when they subsequently come to negotiate and settle, nothing is more common than for the party to say, you shall have the first lot of goods on such terms, or for so much less than I agreed to take, and the second lot, for which no price was fixed, you shall have for so much. In the first instance, if the proposition were agreed to, it would supercede the original contract and create new rights and liabilities, growing out of the original transaction, precisely as was done in this case, and those rights and liabilities would, be determined precisely as if no original contract had ever been made, and would depend entirely upon the new agreement. Such must have been the intention of the parties here. The whole agreement must be taken together, in order to arrive at the intention of the parties. The expressions of one part must be taken in connection with those of another. Then follows a provision in relation to the mode of payment, which, as no question is raised upon it, need not be particularly examined. A difficulty was however suggested, growing out of a subsequent clause providing for a postponement of a part of the payment. It is this: “and on a final settlement of all just dues and demands now existing between the said Stout and the said Whitney, the said Stout agrees to give the said Whitney twelve months from the first day of March next, with six per cent, interest on the latter payment.” It is true, as was urged, that this contemplates a future settlement, but it does not follow that that was to be a settlement of the partnership transactions, as they had originally existed. It does not follow because the parties did not account together and strike a balance, that they did not dissolve the partnership in such a way as to super-cede the necessity of taking an account of the profits and losses of the concern. The manifest object of the agreement was to avoid the necessity of such an accounting and to establish a new basis upon which their transactions were to be settled. Upon the basis thus established, a court of law is perfectly competent to determine the rights of the parties; as much so as if there had never been a community of interests in the business. The expression: “ All just dues and demands” is broad enough to include individual dealings, if any such had previously existed, as well as the rights created by the contract, and growing out of their mutual dealings. It is unnecessary to inquire what was meant by “ The latter payment,” because the twelve months had expired before this action was commenced. Following the clause last quoted, is the provision that Whitney should pay the three notes, on which he was security for -Stout, and then, it is provided as follows: “ Which sum is considered as part payment in consideration of .said goods.” This provision is in harmony with the view already expressed, that it was the intention of the parties to make Whitney occupy the position of an original purchaser of the goods. It is to no purpose to suggest, that Whitney may have remitted to Stout, a part of the proceeds of the goods sold, and then object that no provision is made for such a state of case. Mo .such fact is shown to exist. If it did, and that would in any wis e vary the construction of the instruments, it is for the party claiming a benefit from it to show it, But if such remittances were .shown, we do not think it would change our construction of the contract. If we are correct in the view that it was the intention of the parties to make Whitney occupy the position of an original purchaser of the goods, and that the rights and liabilities of the parties are to be determined upon that basis, then of course Whitney would have to be credited with such remittances as so much purchase money paid. Although the construction which we give to the contract may perhaps differ somewhat, from that given in the first, second and fourth counts of the declaration, yet the difference is not of such .a character as to affect the validity of the declaration. Objections were made to some of the assignments of breaches, but as the demurrers are to each count entire, if there is one good assignment in the count, the demurrer must be overruled It may be proper to refer to one of the assignments, to which particular objection was made. In that assignment it is stated, that the defendant was, previous to the formation of the partnership, indebted to the plaintiff for goods sold, money lent, &c., which he had refused to pay, as by the covenant, he had agreed to do. This we think is a misapprehension of the covenant. The only clause of the contract, upon which any reliance can be placed to support this assignment, is the one last quoted. That clause, however, does not obligate the defendant to pay those old debts, but it postpones the right of the plaintiff, to demand the payment of those demands till March, 1850. It was inserted for the benefit of the defendant and not of the plaintiff. The third count was abandoned on the argument, and it is unnecessary to examine it. To the other three counts the demurrer was improperly overruled. The Judgment is reversed and the cause remanded, with leave to the defendant to plead to the merits. Judgment reversed*