(No. 31826.—

LOTTIE STEPHENSON *et al.*, Appellants, *vs.* FRANK KULICHEK, Appellee.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

140

Francis J. Higgins, of Chicago, for appellants.

Scott, Sakelson, Tyrrell & Collias, of Chicago, (Joseph T. Tyrrell, of counsel,) for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

This is a suit instituted by appellants Lottie Stephenson and Irene Kaminskas, sisters, against appellee Frank Kulichek, a brother, in which they sought to establish a constructive trust with respect to an undivided two-thirds interest in a parcel of Chicago real estate upon which was located a three-story six-family apartment building, and prayed for an accounting. This appeal is from a decree of the superior court of Cook County dismissing the amended complaint for want of equity and comes here directly since a freehold is involved.

On November 17, 1942, Josephine Kulichek, mother of all the parties hereto, conveyed the real estate by warranty deed to her son, Frank Kulichek. Plaintiffs contend that the defendant induced his mother to execute the deed to

avoid probate costs at her death, upon his representation that he would hold title until her death and would then convey a one-third interest in the property to each of the plaintiffs or dispose of the property and divide the proceeds equally between the three of them. All of this the defendant denied, and alleged that it was his mother's desire and intention that the entire title be vested in him and that the plaintiffs should have no interest in the premises.

The pleadings and the evidence disclosed that the mother was, at the time of making such deed, of the age of 72 years; that she was foreign born and unable to read or write English; that she had been widowed since 1921; that she and the defendant, who was 36 years of age at the time of the making of the deed, had always lived together and then resided in one of the apartments in the building; that she was ill from time to time suffering from diabetes and was confined to her bed just prior to and at the time of the execution of the deed. Although she was ill enough to have a doctor and a priest about this time, she recovered within a month and enjoyed fair health until her death in July, 1948.

There is considerable conflict in the testimony surrounding the execution of the deed. The defendant testified that about a week before the signing of the deed, his mother did not feel well and asked him to call Samuel Fabry, a notary public who had previously drawn papers for her, as she wanted to turn the property over to Frank. He further testified that at her request he called Fabry to their home in the afternoon of November 17, 1942; that Fabry talked to his mother in Slovak, which was practically the same as Bohemian; that she told Fabry to draw a deed to the property, and to another property not in question, in favor of Frank; that Fabry asked for the abstracts and he gave them to him; that Fabry came back the same afternoon with the prepared deeds and that his mother sat on the edge of the bed and signed them. Defendant fur-

ther stated that Fabry asked for a witness and that defendant called his niece, Irene McElroy, from an adjoining room, and she signed the deed in question as a witness, and he then called one Anna Sallenka, a tenant from upstairs, who also signed as a witness; that Anna sat on the bed and talked to Josephine but defendant did not relate their conversation. He denied categorically that he promised his mother to convey any interest in the property or to divide the proceeds of the sale with the plaintiffs and denied that his mother told the notary or the witnesses that she was conveying it to him under such a promise. He admitted that there was no monetary consideration for the property.

The niece, Irene McElroy, testified that she was a daughter of the plaintiff Lottie Stephenson and had lived the greater portion of her life with her grandmother, Josephine Kulichek; that she was in the room adjoining the bedroom of her grandmother about 45 minutes before she witnessed the deed; that she heard a conversation in Bohemian which she understood but could not speak; that she heard the defendant tell his mother that if anything happened to her the courts and lawyers would get everything and he wanted her to put title in him and that if anything happened to her he would divide it so that all three of them would get the same. She further testified that about 45 minutes after that conversation Fabry came and went into the bedroom; that Josephine talked to him in English and told him that she was conveying everything to Frank and he was going to take care of everything and divide it equally; she further testified that while Fabry was there she was going to the kitchen and saw Frank sitting on the bed holding Josephine's hand helping her sign something, and that her grandmother was then lying in bed and too weak to sign by herself. She stated she was called into the bedroom and witnessed the deed, and testified positively that it was about 8:45 in the evening. She further testified that Frank then went and got Anna Sal-

lenka to witness the deed, and when Anna asked Josephine what the signing was all about she said that Frank had told her it would be best to convey everything to him and he would divide it with the girls so all three would get the same, and that during that conversation Frank said that was the way they wanted it.

Anna Sallenka testified that she had lived in the building for seven years prior to November 17, 1942; that she was not related to any of the parties but knew them well; that Josephine was very sick from October to about Christmas in 1942; that during that time she went down to Josephine's apartment three or four times a day; that she took soup to her and gave her milk and water and otherwise ministered to her needs. She further testified that she was called about 9:00 o'clock in the evening of November 17, 1942, by the defendant, to witness a deed to the house. She said she asked Josephine Kulichek the question, "Did you sign Frankie the house over?" and that Josephine Kulichek replied that it was only so that if she should die it would not have to go to probate court and he could sell the house and divide it in three shares and give each one of the girls a share.

These three witnesses were the only ones to testify to the execution of the deed, as the record shows that Fabry, the notary public, died prior to the hearing. The original deed, which is part of the record, discloses the signature of Josephine Kulichek to be very large, scrawled, covering two lines with practically each letter of the name separated and barely legible. The consideration stated in the deed is ten dollars and other good and valuable consideration, and attached thereto are documentary stamps for $7.70, each of which was cancelled as follows: "S.F. 11-18-42." The deed was lodged for record on November 18, 1942, at 12:11 P.M. There was little evidence as to business transactions by the mother. The defendant testified that sometimes he ordered repairs for the property and some-

times his mother did so. He further testified that she did not have any business dealings, that the only things she had were some real-estate bonds, and that at her request he attended bond meetings and reported to her what was said at such meetings.

There was evidence that the mother owned other property which had been conveyed to her by an uncle of the parties hereto and that she signed a deed to the other property to the defendant the same day. Anna Sallenka denied witnessing more than one deed. Frank conceded that the other property was conveyed to him with the understanding that he was to carry out the uncle's wish to pay the uncle's funeral and other expenses and to divide the balance between himself and Irene Kaminskas, and stated such division had since been made and that he had receipts. The record is not clear but tends to show that there was litigation between Irene and Frank before her share of the proceeds of the sale of that property was paid to her. The parties did not see fit to introduce the other deed in evidence and it is not in itself material here, but the fact that it was conveyed without restriction upon Frank other than a verbal understanding is highly significant of the faith and confidence reposed in him by his mother.

While the pleadings are not specific as to the issue of confidential relationship, the allegations of the complaint are sufficiently broad to charge such a relationship. Furthermore, the parties, both upon the trial of the case and on this appeal, recognize that issue as of paramount importance. The first question presented is whether a confidential or fiduciary relationship existed between Josephine and the defendant. While the chancellor in this case made no specific finding as to the existence of a fiduciary relationship, the decree is tantamount to a finding that such relationship did not exist.

In general, a fiduciary or confidential relationship exists in all cases where one reposes trust and confidence in

another who thereby gains a resulting influence and superiority over the first. (*Kester* v. *Crilly,* 405 Ill. 425; *Krieg* v. *Felgner,* 400 Ill. 113.) The origin of the confidence and the source of the influence are immaterial. (*Lipscomb* v. *Allen,* 298 Ill. 537.) The relationship may exist as a matter of law or it may be moral, social, domestic or merely personal. (*Kester* v. *Crilly,* 405 Ill. 425; *Hensan* v. *Cooksey,* 237 Ill. 620.) Particularly, factors to be taken into consideration are degree of kinship, if any, disparity in age, health, and mental condition, and the relative education and business experience of the parties, and the like. *Kester* v. *Crilly,* 405 Ill. 425; *Suchy* v. *Hajicek,* 364 Ill. 502; *Hensan* v. *Cooksey,* 237 Ill. 620.

After a careful consideration of all the facts in this case, including the circumstances surrounding the execution of the deed in question, and taking into consideration the close kinship of the parties, their living alone in the same household, the disparity in their age, the inability of the mother to read or write English, her lack of business experience, her physical disability and poor eyesight, and the reliance, confidence and trust reposed by the mother in her son as shown, in addition to the other evidence, by the conveyance of the other property with only verbal instructions to him to dispose of it and divide the proceeds between himself and his sister, we are definitely of the opinion that the relationship between the mother and defendant was of a fiduciary character.

Constructive trusts are divided into two general classes, one being where actual fraud is considered as equitable ground for raising the trust, the other being where the existence of a confidential relation and the subsequent abuse of the confidence is sufficient to establish the trust. (*Peters* v. *Meyers,* 408 Ill. 253; *Kester* v. *Crilly,* 405 Ill. 425; *Brod* v. *Brod,* 390 Ill. 312; *Steinmetz* v. *Kern,* 375 Ill. 616.) Where a confidential or a fiduciary relationship exists, the burden rests squarely upon the grantee or bene-

ficiary of an instrument executed during the existence of such relationship to show the fairness of the transaction, that it was equitable and just, and that it did not proceed from undue influence. The mere existence of a confidential relationship prohibits the dominant party from seeking any selfish benefit during the course of the relationship and affords a basis for fastening a constructive trust upon property so acquired. *Kester* v. *Crilly,* 405 Ill. 425; *Brod* v. *Brod,* 390 Ill. 312.

To sustain this burden the defendant relies upon his own testimony and that of one Anna Rezek and one Joseph Smith. Anna Rezek testified that about three weeks before the death of Josephine, Irene Kaminskas told her that her mother had conveyed the house to Frank and that he should get it because he had taken care of her mother all of these years. Joseph Smith testified that Irene had said in his presence, just before her mother's death, that she would like for him to meet the girl that Frank was going to marry, that Frank had a house and that they could live there together. All of this Irene denied. While Frank testified as to some bad relations between Irene and her mother, the record is very clear that the girls came to the home of the mother and helped her quite often, both before and after the execution of the deed. As a matter of fact, there was strong evidence that Irene was there until about 6:30 in the evening of the day of the execution of the deed and was in the basement washing for her mother the following morning.

Additional facts are worthy of note. The defendant, when called as an adverse witness, testified that just before the signing of the deed he read it to his mother, while on direct examination he stated that the notary read it to her in Bohemian. While there were attached to this deed documentary stamps in the amount of $7.70 which indicated a consideration of $7000, the defendant testified that he did not tell the notary to attach the stamps to the instrument

nor did he pay the notary. It is strange indeed that Frank, who was present during all the negotiations, failed to give any satisfactory explanation as to the placing of documentary stamps on the deed.

Appellee relies heavily upon the fact that the chancellor dismissed the complaint for want of equity. The court below refused the proffer of written briefs and directed a decree for the defendant without argument, over the protest of plaintiffs' counsel. We are not unmindful of the rule cited by appellee that when a chancellor has heard the testimony in open court, has had an opportunity to see the witnesses and listen to their testimony from the witness stand, his decree will not be reversed unless it is palpably contrary to the weight of the evidence. In all cases the findings of fact by the chancellor should be given due weight and consideration. It is also well established that when it appears from a consideration of the entire record that the evidence does not justify the decree, it is the plain duty of this court to reverse it. (*Daven* v. *Downey,* 378 Ill. 543; *Durbin* v. *Carter Oil Co.* 378 Ill. 32; *Johnson* v. *Lane,* 369 Ill. 135.

Appellee contends that even though a confidential relationship is established, there must also be proof of undue influence, and cites in support thereof *Peters* v. *Meyers,* 408 Ill. 253, and *Neagle* v. *McMullen,* 334 Ill. 168. In the Peters case we said, "It is not the existence of the fiduciary relationship which alone is the ground for raising a constructive trust, but in order to establish such trust there must be in addition to the fiduciary relationship the *second factor* of undue influence," (citing *Brod* v. *Brod,* 390 Ill. 312, and *Neagle* v. *McMullen,* 334 Ill. 168;) but we also there said, "the presumption obtains that the transaction resulted from influence and superiority, and the burden rests upon the grantee to show that it was fair, equitable and just and did not proceed from undue influence. (*Kester* v. *Crilly,* 405 Ill. 425, and *Brod* v. *Brod,*

390 Ill. 312.)" A constructive trust is established by the existence of a confidential relationship plus the subsequent abuse by the dominant party of the confidence reposed in him by his taking undue advantage of the dependent party. Where a fiduciary relationship has been found to exist and a transaction occurs between the dominant and dependent party which is disadvantageous to the latter, such transaction will be given the closest scrutiny. The presumption of undue influence immediately becomes a factor and the burden is upon the dominant party to show the fairness of the transaction. We have heretofore found that a fiduciary relationship existed. We now find that the defendant has wholly failed to sustain the burden placed upon him of showing that he did not betray the trust and confidence reposed in him and that a constructive trust resulted in favor of the plaintiffs.

The decree of the superior court of Cook County is reversed and the cause is remanded, with directions to enter a decree conformably to the prayer of plaintiffs' amended complaint. *Reversed and remanded, with directions.*