**Orville P. Fox, Appellant, v. Fox Valley Trotting Club, Inc., Appellee.**

**Gen. No. 46,429.**

First District, Third Division.
December 29, 1954.
Released for publication January 27, 1955.

Irwin Bloom, of Chicago, for appellant; William C. Wines, of Chicago, of counsel.

Gregory, Gilruth & Hunter, of Chicago, for appellee; Irwin T. Gilruth, and Robert L. Hunter, both of Chicago, of counsel.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an equitable action for an accounting of moneys claimed "as rental or damages for loss of rental" under a lease of a race track. The issues were referred to a master who recommended a decree allow-

ing plaintiff more than $100,000 including attorney's fees. The chancellor rejected the recommendation and entered a decree dismissing the complaint for want of equity. Plaintiff has appealed.

Plaintiff owns a race track in Aurora, Illinois. He leased it to defendant in 1946 for five years with an option to renew. Defendant exercised its option in 1951 and the lease was renewed for an additional five-year term. In 1952 defendant made an agreement to conduct a meet at the Maywood, Illinois race track. The Maywood meet was conducted by defendant under a license from the State. Since only one meet in a year can be conducted in Illinois by a licensee, defendant was precluded from racing at the Aurora track. Plaintiff objected to the issuance of the license for the Maywood meet and subsequently brought this suit.

Under his original complaint plaintiff succeeded in having defendant post a bond in lieu of appointment of a receiver. We allowed an appeal, Fox v. Fox Valley Trotting Club, Inc., 349 Ill. App. 132, and reversed the order. After our decision plaintiff filed an amended and supplemental complaint. The issues joined on this pleading were decided by the master in favor of plaintiff.

The original complaint alleged that defendant was compelled by an implied covenant in the lease to conduct a racing meet each year at and only at the Aurora track. The idea of an implied covenant was subsequently abandoned. In our opinion on the previous appeal we construed the lease, which was part of the complaint. We decided that the complaint alleged no facts from which it appeared or could be inferred that defendant was not free to conduct meets elsewhere. The amended complaint omitted any allegation of an implied covenant limiting defendant's meets to Aurora. It is conceded in this court that there is no express covenant to that effect.

Plaintiff's theory in the amended complaint is that the lease, in the light of the objective facts, must be construed as imposing the obligation on defendant to race at Aurora.

The substance of the new allegations in the amended complaint are; that the lease provided that the Aurora track "may be occupied and used" for purposes other than harness racing; that the parties intended that the principal use should be racing; that this intention was expressed by the language providing that should racing meets be outlawed in Illinois or Kane county or, at the Aurora track by any authority without defendant's fault then defendant could cancel the lease; and that until 1952 defendant used the premises for practically no other purpose but harness racing and up to the time of the trial stabled horses on the premises. It was further alleged that defendant by means of the Maywood meet intended to and did cheat and defraud plaintiff of his "just rentals"; that the value of the Aurora track was approximately $1,500,000; and that the reasonable rental was far in excess of the base rental. An amendment to this pleading filed after the master's report alleged failure of the defendant to account, as required by the lease, for the gross income of the meet at Maywood and that the accounting would necessarily be "long, complicated and intricate."

The master admitted as evidence the conversations and negotiations of the parties leading to the execution of the lease. This was for the express purpose of explaining what the parties meant by the terms "occupied and used," in the following context:

". . . said premises are to be occupied and used solely for the purposes stated below, namely. . . ."

There were then listed, harness racing meets, horse sale auctions, saddle horse shows, rodeos and concessions in connection with these uses.

97

The chancellor in sustaining exceptions to the report found no ambiguities in the lease and no express or implied covenant requiring defendant to conduct a harness racing meet on the premises each year. We think the chancellor was right.

The chancellor thought his interpretation was justified by the "percentage provision" which called for a sum equal to 1½ per cent of the amount bet on the races "conducted and operated on the demised premises." The last four words he thought excluded plaintiff from a percentage of races conducted off the premises. Those words were used in the folowing context:

"The lessee agrees to pay the lessor the following sums:

(a) A sum equal to one half (½) of one (1) per cent of the total amount wagered or bet on the pari-mutuel machines operated in conjunction with the harness racing meets conducted and operated on the said premises, . . ."

■ We think the provision for use of the Aurora track unambiguously limits lessee's use of the premises to the events specified but does not limit defendant's racing meets to that track. A rider to the lease bears this out. In the rider defendant was given the "additional privilege" of conducting "running horse races." The lease provision uses the indicative not the imperative mood. And the word "solely" is not consistent with any sense but that of limitation to the uses specified. These are further considerations justifying the decision of the chancellor.

■ ■ There was no need of clarification of the term "occupied and used," and therefore no basis for considering surrounding circumstances. Englestein v. Mintz, 345 Ill. 48. Prior negotiations would be admissible under Clark v. Muir, 298 Ill. 548, only where there is ambiguity and the court must go beyond the words used to determine what was meant by the lease. However, when the meaning is clear prior negotiations are

98

inadmissible. Nothing in the Clark case; nor 3 Williston, Contracts (Rev. ed.) § 629; Restatement, Contracts §§ 239, 242 nor 9 Wigmore, Evidence (3d ed.) § 2470 justify going beyond the words used in the instant lease.

The lease was prepared by plaintiff's attorney after negotiations of the parties. The words used in the lease expressed the intention of the parties. Defendant was to occupy and use the premises for the sole purposes mentioned and to pay $25,000 base rent plus stated percentages when the authorized events were conducted. Limiting defendant's racing activities to Aurora would be a vitally important provision. Since the limitation was not included originally and when the lease was renewed, this fact has some weight against an intention of limitation. This is not a suit for reformation of the lease but a case involving construction of words used. The option to lessee to cancel should racing be declared illegal perhaps indicates that racing was the principal authorized event but the option also suggests that lessee might wish to use the premises for other authorized purposes.

We need not consider the relationship of the base rent alone and the alleged value of the premises. It is conceded that if we decide that external circumstances were inadmissible, the value allegation is immaterial.

We have read the cases relied upon by plaintiff and find them readily distinguishable. In Mayfair Operating Corp. v. Bessemer Properties, Inc., 150 Fla. 132, defendant was bound to operate the theatre, an obligation was expressly imposed on it to use its best efforts to obtain and maintain highest volume and the minimum rent for late years of the lease was to be based on total rent—base plus percentage—of earlier years. In Wood v. Duff-Gordon, 222 N. Y. 88, defendant was at the "mercy" of plaintiff through an exclusive agency which required her to market her designs through

plaintiff. Her only compensation was ½ of the profits from plaintiff's business efforts. In Selber Bros. v. Newstadt's Shoe Stores, 194 La. 654, the lease described the purpose as "the sale" of shoes, etc. and the court implied the obligation to conduct the business for the mutual benefit of the parties. In Marvin Drug Co. v. Couch, 134 S.W.2d 356 (Tex. Civ. App.), the court implied a covenant to conduct a business in the usual and ordinary manner of lessees where there is a percentage provision. In Cissna Loan Co. v. Baron, 149 Wash. 386, the lease provided defendant "should conduct a department store in said building of the same character." There the court said plaintiff sold defendant a going business and implied a covenant to pay a percentage upon business conducted in part of an adjoining building.

In Seggebruch v. Stosor, 309 Ill. App. 385, the only rent expressed was a percentage of sales of gasoline and defendant occupied the premises but sold most of the gasoline from a station he built on the next door lot. There the chancellor found defendant had done this deliberately to injure plaintiff. This finding further distinguishes that case from this. In that case the court held there was an obligation to use reasonable diligence in operating the business on plaintiff's premises. The case of Daughetee v. Ohio Oil Co., 263 Ill. 518, involved a lease providing that defendant "shall dig wells" and rent was based on the output of the wells. The court implied a duty to diligently explore and develop. In Stoddard v. Illinois Improvement & Ballast Co., 275 Ill. 199, the lease was "for the purpose of quarrying stone" and the term for "as long as the property is suitable for quarrying purposes." A covenant was, of course, implied to quarry stone with reasonable diligence.

100

Some language in these cases seems to support plaintiff's theory but the terms of his lease and the base rental proviso distinguish every case. The argument was made in Englestein v. Mintz, 345 Ill. 48, that unless construed in a certain manner, Mintz would be subjected to inequities under the agreement. The court said at page 59, "The short answer to this is that such was his agreement." Here too, impressive arguments from objective facts fall before our conviction that the words used need no external aid.

█ So far as implying the obligation to race at Aurora is concerned, we think a statement of the law in Marvin Drug Co. v. Couch, 134 S.W.2d 356 at page 361 is useful, "Before a covenant will be implied in the express terms of a contract . . . it must appear therefrom that it was so clearly in contemplation of the parties as that they deemed unnecessary to express it, and therefore omitted . . . or that it is necessary to imply such a covenant in order to give effect to and effectuate the purpose of the contract as a whole."

Cases where a tenant occupied a leased premises with only a percentage rent are not helpful here. In the instant case there was a base rental of $25,000 and the lease indicates that the parties contemplated that there might be no additional rental from a percentage of the bets. The lease provided that unless the amount wagered per day of any meet averaged in excess of $150,000 the additional rental percentage would not apply.

For the reasons given the decree is affirmed.

Affirmed.

LEWE and FEINBERG, JJ., concur.