**William Gundich, Plaintiff-Appellee, v. Emerson-Comstock Company, Inc., Defendant-Appellant.**

**Gen. No. 47,731.**

First District, Third Division.
January 29, 1960.
Rehearing denied February 23, 1960.
Released for publication March 4, 1960.

Andrew J. Farrell, of Chicago, for defendant-appellant.

■■■■■■■■■■■■

J. W. Horwitz and Matthew Steinberg, of Chicago (Sidney Z. Karasik, of counsel) for plaintiff-appellee.

JUSTICE BURKE delivered the opinion of the court.

William Gundich brought an action against the Emerson-Comstock Company, Inc., J. Livingston & Company and Ford Motor Company for injuries suffered on June 13, 1956, in a building under construction to be known as the Ford Stamping Plant at Cottage Grove Avenue and Route 30, Chicago Heights. At the close of plaintiff's case the court directed a verdict in favor of J. Livingston & Company. The jury returned a verdict for $60,000 against Emerson-Comstock Company, Inc., hereinafter called the defendant, and found the Ford Motor Company not guilty. Judgment was entered on the verdict. The defendant did not file a motion for a new trial. Motions for a directed verdict and for judgment notwithstanding the verdict were denied. Defendant, appealing, asks that the judgment be reversed.

Plaintiff was injured about 11:45 in the morning at the third or fourth bay from the south end of the building. He was a member of a crew of five men. They were steel workers employed by the Gust K. Newberg Company, the general contractor. Prior to the occurrence this crew had detached seven beams from the structure and had attached two chokers to the beams for the purpose of removal to another part of the building. One end of each choker was put on a hook lowered from an overhead crane. Two of the beams were loose and the others were bolted together. Three of the beams were known as intermediates and extended from east to west. These beams were about 15 feet long. On top of the intermediates and extending north and south were four beams referred to as stringers. The two inner stringers were bolted to the underlying intermediates. The outer stringers were

139

loose. Prior to the commencement of the lifting operation a choker was attached as nearly as possible to the center of the northernmost intermediate and another choker was attached to the center of the southernmost intermediate. The other ends of both chokers were attached to the small hook which had been lowered by the crane. The load was lifted three or four times and on each of the lifts the load was off balance. On the last lift it was upward from a foot to two feet, the load tipped and the easternmost loose beam fell off. This caused the load to tip to the west, resulting in the westernmost beam falling off and striking the plaintiff, who was precipitated to the opening below and suffered serious injuries.

Plaintiff maintains that the evidence proves violations of Sections 60 and 67 of the Structural Work Act, commonly called the Scaffolding Act (Ch. 48, Ill. Rev. Stat. 1959) and that the person charged with responsibility knew or could have been aware of an unsafe condition. The crane was being operated by William R. Brown. Plaintiff states that the negligence of Brown in operating the crane caused the injuries to the plaintiff and established violations of either or both of the sections of the Scaffolding Act. Plaintiff urges that a "system" of loose, hazardous, variable and ineffective signals between the crane operator and those working below, to whom he was a stranger and with whom he had never spoken or discussed signals, exposed the plaintiff to a hazardous pre-existing condition of which defendant knew or could have discovered or remedied.

Defendant insists that William R. Brown at the time of the occurrence was an employee of the Gust K. Newberg Company, employer of the plaintiff, under the Loaned Servant Doctrine and was not an agent or servant of the defendant. The defendant is an electrical contractor. It did not own the crane or have any-

thing to do with the operation of the crane at the time of the occurrence. The crane was owned by the Ford Motor Company. Defendant did not assign Brown to the crane. The 19 or 20 cranes being used had to be operated by union operators. Some of the cranes were operated by electricians and some by hoisting engineers. The operation of the crane was divided between the two unions. This was provided in a decision of the Executive Council of the American Federation of Labor on March 4, 1926, and adopted on August 4, 1926. Brown was paid by and was in the general employ of the defendant. The defendant through a joint venture agreement was completely reimbursed by the general contractor, Gust K. Newberg Company, which had complete control over the crane operator, Brown, at all times while he was on the crane. The only possible connection that the defendant had with the misfortune that befell the plaintiff was the fact that Brown was on its payroll. From the time he was called over to where the job was going on until the time of the occurrence, Brown received all directions from the foreman and assistant foreman of the Gust K. Newberg Company.

 Under facts similar to those in the case at bar the weight of authority holds that the employee is the agent of the temporary employer at the time of the occurrence. In Allen-Garcia Co. v. Industrial Commission, 334 Ill. 390, where a crane and engineer were furnished to a temporary employer, the Supreme Court concluded that the employee was in the employment of the temporary employer at the time of the accident. The court said (394):

"At common law an employee in the general employment of one person may, with his consent, be lent to another for the performance of special work and become the employee of the person to whom he is lent while performing such special service. . . . The test

141

whether or not the workman, in the performance of the special work for which he is lent, becomes the employee of the person to whom he is lent, is whether or not he becomes for the time being wholly subject to the control and direction of the person to whom he is lent for the special service being performed and freed during such time from the direction of his master."

In the instant case the defendant had nothing to do with the crane or the job upon which it was operating and little to do with choosing the employee assigned to the job in that Local 134 of the Electricians Union and the Hoisting Engineers Union controlled that situation. The fact that the temporary employer did not pay the wages direct does not determine that it was not the employer at the time of the mishap. Indian Hill Club v. Industrial Commission, 309 Ill. 271; Western Marine & Salvage Co. v. Ball, 37 F.2d 1004 (Petition for writ of certiorari denied, 281 U. S. 749).

The trial judge indicated that he would not admit certain evidence. Outside the presence of the jury the defendant offered to prove and introduce certain exhibits to establish that defendant was the general employer of Brown, and that on this occasion he was loaned to the general contractor, Newberg & Company, and that the latter completely reimbursed defendant through the joint venture for the time of Brown and also for his expenses going to and from work, and that the proof would also show that Brown's work for Newberg & Company was not included in the electrical contract, but was in the nature of a courtesy shown to Newberg & Company and that Brown while operating the crane was the servant of the general contractor, Newberg & Company, and not of defendant, and that the proof would further show that Brown received all his directions from employees of Newberg & Company. The proffered evidence would further show that the operation of the crane had nothing to

do with the electrical contract, that the operation of the crane was divided between the Electricians Union and the Hoisting Engineers Union, and that defendant had no control over the choice of the operators. The proffered testimony establishes that the defendant did not control the choice of the loaned employee and that defendant was one of four companies doing the electrical work on the building as a joint venture. The electrical work had nothing to do with the mishap. The work connected with the mishap was that of the general contractor, Gust K. Newberg Company, which had complete supervision over the crane and its operator at the time of the occurrence. He was its employee for that work. We are of the opinion that the defendant is without blame for the mishap.

■ ■ Plaintiff urges that the defendant's post-trial motion preserved for review only the legal sufficiency of the evidence admitted into the record by the trail court, and that the evidence excluded was not preserved, citing Walden v. Chicago & N. W. Ry. Co., 411 Ill. 378, 390; Millikin National Bank of Decatur v. Shellabarger Grain Products Co., 389 Ill. 196, 200. These cases do not support plaintiff's position. The defendant does not ask for a new trial. In our opinion the proffered testimony was admissible under the Loaned Servant Doctrine. It has been held that when competent evidence is offered and objection thereto is sustained, a court of review will consider the case the same as if the evidence had been admitted. Sée Belorodker Loan & Investment Co. v. Goldenberg, 253 Ill. App. 416. In Gustin for Use of Atwood v. Bryden, 205 Ill. App. 204, the court said (218):

"The court below refused to admit the renunciation in evidence, but its execution and filing were proved, and it was offered and is contained in the bill of exceptions, and as it was kept out on the objection of appellee we are of the opinion that if it was competent evidence we should treat it as if it had been admitted.

143

. . . We are of the opinion that we ought not to reverse and remand the case for a new trial merely to let in said renunciation, but that the renunciation and proof of its execution and filing being in the record, we should treat it as if it had been admitted."

It is unnecessary to consider the other points presented. For these reasons the judgment of the Circuit Court is reversed and the cause is remanded with directions to enter a judgment in favor of the defendant and against the plaintiff.

Judgment reversed and cause remanded with directions.

BRYANT, P. J. and FRIEND, J., concur.