GOLDBLATT BROS., INC., Plaintiff-Appellant, *v.* ADDISON GREEN MEADOWS, INC. *et al.*, Defendants-Appellees.

(No. 55772;

First District—October 31, 1972.

*Modified upon denial of rehearing December 19, 1972.*

492

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, of Chicago, (Edwin A. Rothschild and Jonathan H. Sherr, of counsel,) for appellant.

Russell J. Topper, and Epton, McCarthy, Bohling & Druth, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from plaintiff's three count complaint which sought to enforce the terms of a lease. Plaintiff is the lessee of a department store in a shopping center which was developed by defendant, Addison Green Meadows, Inc. Count I of the complaint sought an accounting of profits and damages for breach of a restrictive covenant. Count II sought to enjoin defendants from interfering with plaintiff's purported exclusive easement rights in the common areas of the shopping center. Count III sought specific enforcement of the lessor's express covenants to construct parking areas and driveways. Upon defendants' motion for judgment on the pleadings, Counts I and II were dismissed with prejudice. After a bench trial Count III was dismissed for want of equity. Plaintiff appeals from each of the respective orders dismissing the counts of the complaint.

OPINION

Count I of plaintiff's complaint alleged as follows: By a lease dated June 30, 1961, (hereinafter referred to as the Goldblatt lease) plaintiff leased shopping center space on which lessor Addison Green Meadows, Inc., was to construct a Goldblatt's department store. The site of the original shopping center (hereinafter referred to as Tract 1) was delineated by metes and bounds in the lease. Attached to the lease and incorporated therein, was a plat of survey of Tract 1. Article Seventh, paragraph M of the lease provided as follows:

> "Lessor agrees that in connection with all leases for variety or general merchandise stores to be negotiated for said shopping center involving an area in excess of fifteen thousand (15,000) square feet, the approval in writing by Lessee of any such proposed tenant shall be first had and obtained."

Pursuant to the lease, lessor constructed a one-story department store which plaintiff occupied in March, 1962. Anthony Lullo, sole stockholder and president of Addison Green Meadows, Inc., subsequently ac-

quired another parcel of real estate (hereinafter referred to as Tract 2) directly west of, but adjacent to, Tract 1. Tract 2 was held in a land trust, dated April 27, 1964, of which Lullo was the sole beneficiary and for which defendant, Western National Bank of Cicero, was the trustee. On March 21, 1966, plaintiff received notice that Tract 2 was to be leased to a department store tenant. Plaintiff formally objected, asserting that, without its consent, such action would breach the terms of the restrictive covenant in the Goldblatt lease. Nonetheless, by a lease dated February 16, 1967, defendant Western National Bank of Cicero leased Tract 2 to Kimzay Illinois, Inc., which, in turn, entered into a sublease with Zayre of Illinois, Inc. A retail shopping center, containing a Zayre department store in excess of 15,000 square feet, was constructed and opened to the public in March, 1968. No barriers divided Tract 1 from Tract 2, and the stores on each tract were easily accessible from the other tract. Plaintiff alleged in its complaint that, as a direct result of the competing operations of the Zayre store, plaintiff's sales and profits were diminished.

■■ Plaintiff contends that the restrictive covenant in the Goldblatt lease limited defendants' right to lease space in the Addison Green Meadows Shopping Center, both as it existed in 1961 and as it might exist in future years, to competing tenants. Plaintiff thus construes the term, "said shopping center," as used in the restrictive covenant, to encompass that land which constituted the shopping center in 1961 (Tract 1) as well as that after-acquired land which enlarged the original shopping center (Tract 2). Despite the absence in the lease of any reference to after-acquired property, we would tend to accept plaintiff's construction if the lease failed to delineate or was in any manner vague or conflicting with regard to the location of "said shopping center." At a minimum, we would then recognize the existence of an ambiguity warranting the submission of parol evidence. (*Slice v. Carozza Properties*, 215 Md. 357, 137 A.2d 687; *Parker v. Lewis Grocer Co.*, 246 Miss. 873, 153 So.2d 261.) However, such is not the case. Article First, Section B of the lease contains the following provision:

"B. Legal Description of 'Addison Green Meadows Shopping Center.'

The legal description of the land upon which the development will be built hereinafter referred to as 'Addison Green Meadows Shopping Center' is as follows:"

Tract 1 is then described by metes and bounds. Following this description, the lease continues:

"All covenants, conditions and agreements herein contained shall be construed as covenants running with the aforesaid land."

Attached to the lease and entitled, "Addison Green Meadows Shopping

Center," is a plat of survey which depicts Tract 1 only. To these diverse portions of the lease we must apply the established legal doctrine that the intention of parties to a written contract must be gathered from the contract as a whole and not merely from any clause standing alone. (*Stout v. Whitney*, 12 Ill. 218, *Martindell v. Lake Shore Nat. Bank*, 15 Ill.2d 272, 154 N.E.2d 683.) When read in conjunction with the legal description and the plat of survey, the phrase, "said shopping center," assumes a clear, unambiguous meaning. That phrase refers to Tract 1 only; not to Tract 2 or to any other after-acquired property. We therefore conclude that the restrictive covenant in the Goldblatt lease did not apply to Tract 2 and was not breached by the sublease of Tract 2 to a competing business operation.

■■■ Our construction of the Goldblatt lease finds support in *Crest Commercial, Inc. v. Union-Hall, Inc.*, 104 Ill.App.2d 110, 243 N.E.2d 652. In that case plaintiff-lessor initiated a declaratory judgment action for the interpretation of a shopping center lease, executed in 1960 and containing a covenant prohibiting lessor from leasing "any of the shopping center area to a business that substantially competes with" lessee's business. The lease further provided that "Parcel A, Parcel B and Parcel C in total constitute and are to be considered for the purpose of this lease 'the shopping center'." One year after the lease was executed, lessor acquired Parcel D, a tract of land adjacent to Parcel B. Parcel D was not mentioned in the original lease, nor in a supplemental lease executed in 1962. In 1967 lessor, having developed Parcel D, desired to lease it to the Walgreen Company for construction of a drugstore. It was undisputed that Walgreens' operations would substantially compete with defendant's. When the parties were unable to agree whether the contemplated action would violate the restrictive covenant in the original lease, the lessor sought declaratory relief and prevailed in the trial court. On appeal the lessee argued that the restrictive covenant expressly covered Parcels A, B, and C and impliedly covered Parcel D as well. The Court rejected this argument in the following manner, 104 Ill.App.2d at 117-118:

> "Restrictive covenants are valid in Illinois if they are reasonable, *House of Vision, Inc. v. Hiyane*, 37 Ill.2d 32, 37, 225 N.E.2d 21 (1967). However, as a general rule restrictive covenants are strictly construed and all doubts must be resolved in favor of natural rights and against restriction, *Staley v. Mears*, 13 Ill.App.2d 451, 456, 142 N.E.2d 835 (1957). In *Postal Tel. Cable Co. v. Western Union Tel. Co.*, 155 Ill. 335, 40 N.E. 587 (1895), the Supreme Court said at pp. 347-348:
>
> 'Restrictions on the power of alienation have long been un-

favored, and the policy of this State has ever been hostile to them, and this principle is so firmly engrafted on our polity [sic] that such covenants will be construed with the utmost strictness, to the end that the restraint shall not be extended beyond the express stipulation; and all doubts, as a general rule, must be resolved in favor of a free use of property and against restrictions.'

In addition, it appears that the lease in question was prepared by the defendant and the rule is that a written instrument is construed most strongly against the person who prepared it, *Western Illinois Oil Co. v. Thompson*, 26 Ill.2d 287, 291, 186 N.E.2d 285 (1962).

The defendant argues that the rule of strict construction should not only apply to shopping centers because they are of recent origin and have in many cases expanded rapidly beyond their original contemplation. Defendant acknowledges that there is no authority in the Illinois cases for this proposition but they direct our attention to cases from other states which seem to offer support. A few examples are: *Carter v. Adler*, 138 Cal.App.2d 63, 291 P.2d 111 (1955), *Parker v. Grocer Co.*, 246 Miss. 873, 153 So.2d 261 (1963) and *Daitch Crystal Dairies, Inc. v. Neis Loss*, 60 Misc.2d 504, 185 NYS.2d 188 (1959). Many of these cases turn on the good faith of the parties. A tenant is deluded into believing himself protected and then the center is expanded to evade the restriction. We cannot presume bad faith and there is nothing in the record before us from which such a conclusion can be drawn.

It is true that shopping centers are, for the most part, a post-World War II development. However, the rules by which we construe documents are ancient and we see no logical basis for having one set of rules for shopping centers and a different set of rules for other contractual relationships. We recognize the problem presented but the defendant could have avoided any difficulty by simply drawing the lease to cover the shopping center as it then existed and as it might exist at any time in the future. The parties clearly expressed themselves in the lease. This court has no right to remake their agreement. We can only apply the lease as written and in so doing we conclude that the restrictive covenant does not cover the premises in question."

Plaintiff at bar seeks to distinguish *Crest Commercial* in two ways. First, it is asserted that the decision in *Crest Commercial* holds by implication that only a lessor who has demonstrated good faith can avoid an expansive interpretation of a shopping center restrictive covenant. We

divine no such holding from the language cited above. When reduced to its essence, *Crest Commercial* holds that, applying a strict construction, the restrictive covenant at issue in that case clearly and unambiguously applied only to Parcels A, B and C and did not apply to Parcel D. Second, it is asserted that the presence of a percentage lease (whereby a portion of the rent is based upon a percentage of lessee's gross sales) in the case at bar imposed upon defendants a duty of "extreme good faith," which was breached by the sublease of Tract 2 to plaintiff's competitor. In support of this distinction plaintiff cites the following cases: *Carter v. Adler,* 138 Cal.App.2d 63, 291 P.2d 111; *Seggebruch v. Stosor,* 309 Ill.App. 385, 33 N.E.2d 159; *Simhawk Corp. v. Egler,* 52 Ill.App.2d 449, 202 N.E.2d 49, and *Daitch Crystal Dairies, Inc. v. Neisloss,* 8 App.Div.2d 965, 190 N.Y.S.2d 737. The first of these cases was adequately distinguished in *Nevada Food King, Inc. v. Reno Press Brick Co.,* 81 Nev. 135, 400 P.2d 140, wherein it was noted that the lease in *Carter v. Adler* contained a clause allowing either party to terminate the lease should gross sales fall below a stated minimum. The duty thus owed by lessor to lessee was one of good faith to avoid affirmative actions which could cause a lease forfeiture. The absence of such a forfeiture clause in our case renders *Carter v. Adler* inapposite. The two cited Illinois cases stand for the proposition that a lessee under a percentage lease owes the lessor a duty to operate the leased premises in a manner which will generate the amount of rent contemplated by the parties. The covenants implied in those cases derived from the probable intention of the parties and not from any implied covenant of "extreme good faith." We are aware of no Illinois case which has implied such a nebulous covenant into a percentage lease. We are also aware of no Illinois case implying into a percentage lease a covenant by lessor to refrain from using his other property in a manner which might tend to diminish lessee's profits. Nor are we prepared to imply the existence of such covenants as a matter of law. As we stated in *Fox v. Fox Valley Trotting Club, Inc.,* 4 Ill.App.2d 94, 101, 123 N.E.2d 595 (reversed on other grounds, 8 Ill.2d 571, 134 N.E.2d 806):

> "* * * Before a covenant will be implied in the express terms of a contract * * * it must appear therefrom that it was so clearly in contemplation of the parties as that they deemed unnecessary to express it, and therefore omitted * * * or that it is necessary to imply such a covenant in order to give effect to and effectuate the purpose of the contract as a whole."

We do not believe that the covenants sought to be implied by plaintiff were either within the contemplation of the parties or are necessary to effectuate the purpose of the Goldblatt lease. Rather, we prefer to define

the rights and obligations of these parties by the clear and unambiguous language of the lease. We reject the reasoning of *Daitch Crystal Dairies, Inc. v. Neisloss, supra,* to the extent that it conflicts with this position.

Based on our own construction of the lease, as well as on the authority of *Crest Commercial Inc. v. Union-Hall, Inc., supra,* we hold that the restrictive covenant in the Goldblatt lease applied only to Tract 1 and that the trial court did not err in dismissing Count I of plaintiff's complaint.

Count II of plaintiff's complaint alleged as follows: Plaintiff, by the terms of the Goldblatt lease, was granted an exclusive easement for the use of the parking areas and driveways of Tract 1. The exclusive easement arose from Article Fifth, paragraph C of the lease, which provided as follows:

> "The Lessor shall, at its expense, construct asphalt or concrete parking areas and driveways as described in Exhibit 'A' which parking area shall be sufficient to accommodate at least one thousand (1,000) automobiles, for the use, free of charge, of the customers, employees, suppliers and invitees of the tenants of the shopping center and such parking area shall be available for use on or before the occupancy date and during the entire term of this lease and any renewal thereof."

It was further alleged that defendants violated the exclusiveness of this easement by allowing vehicular access between Tract 1 and Tract 2, resulting in the use of the parking facilities of Tract 1 by customers of the store located on Tract 2.

■■ To support Count II plaintiff seeks by implication to add to the lease a word which would substantially alter the respective rights of the parties as established by that lease. To be sure, the cited covenant in the Goldblatt lease confers upon plaintiff an easement for the use of the parking facilities of Tract 1. (*The Fair v. Evergreen Park Shopping Plaza,* 4 Ill.App.2d 454, 124 N.E.2d 649.) However, nowhere in that covenant does one find the term, "exclusive," or any language fairly connoting that term. Further, the absence from the covenant of a term sought to be implied by plaintiff does not in itself create an ambiguity. Under these circumstances the trial court was obligated to honor the plain language of the grant without judicially adding thereto. (*Weaver v. Natural Gas Pipeline Co. of America,* 27 Ill.2d 48, 188 N.E.2d 18.) We conclude that the Goldblatt lease did not convey to plaintiff an exclusive easement for the use of the parking area. The trial court did not err in dismissing Count II.

■■ Count III of plaintiff's complaint was not dismissed on the pleadings, but was dismissed for want of equity after a full evidentiary hear-

ing. While due reference must be accorded the trial judge, who had the opportunity to hear and view the witnesses, we are nonetheless obligated on appeal to review the entire record to determine whether the decree is justified by the evidence and to reverse the decree to the extent that it is not so justified. *Stephenson v. Kulicheck,* 410 Ill. 139, 101 N.E.2d 542; *Daven v. Downey,* 378 Ill. 543, 39 N.E.2d 45; *Liddel v. Smith,* 65 Ill.App. 2d 352, 213 N.E.2d 604.

Count III alleged as follows: By the terms of the Goldblatt lease Addison Green Meadows, Inc., the sole defendant in this count, contracted to construct parking facilities and driveways in accordance with a plat of survey attached to and incorporated in the lease. The plat of survey reflected that all of Tract 1, excluding the land reserved for stores, was to be blacktopped and devoted to parking. The parking facilities were to accommodate at least 1000 cars. In addition, a corridor extending easterly from the northeast section of Tract 1 was to be paved to provide access to Addison Road. Defendant failed to satisfactorily complete these undertakings. First, although the area south of the Goldblatt store was paved, defendant failed to blacktop substantial areas northeast and northwest of the store. Second, the existing parking area was capable of accommodating only 732 cars. Finally, although the access road to Addison Road was substantially completed, it was never connected with the other paved portions of the shopping center. Because of these breaches, the value of plaintiff's leasehold was damaged, and plaintiff's business suffered irreparable damage. The remedy sought was specific performance.

In determining the respective rights and obligations of the parties, we are again guided by clear and unambiguous language within the Goldblatt lease. Article Fifth, paragraph C of the lease provides in part:

"The Lessor shall, at its expense, construct asphalt or concrete parking areas and driveways as described in Exhibit 'A' which parking area shall be sufficient to accommodate at least one thousand (1,000) automobiles, for the use, free of charge, of the customers, employees, suppliers and invitees of the tenants of the shopping center and such parking area shall be available for use on or before the occupancy date and during the entire term of this lease and any renewal thereof."

Article First, paragraph B provides in part:

"Lessor warrants that all of said land [Tract 1] will be used solely for the purpose of constructing the Addison Green Meadows Shopping Center thereon and that the buildings, parking areas, walks, malls and driveways will be constructed and shall remain thereafter in conformity with said Exhibit 'A' [the plat]."

"Exhibit A," the plat of survey of Tract 1, dedicates the entire area surrounding present and future stores to "Parking, Black Top," except for a corridor extending eastward to Addison Road, which is labeled simply, "Black Top." By these lease provisions defendant covenanted to pave all unimproved sections of Tract 1, to provide parking facilities for at least 1000 cars and to pave an access road connecting the shopping center with Addison Road.

■■■ Although its obligations under the lease are clear, defendant seeks to avoid specific performance of those obligations by asserting substantial performance, absence of damages and certain other equitable defenses. Initially, we reject defendant's contentions that Count III should have been barred because of plaintiff's failure to give written notice of its claim or by application of the doctrine of *laches*. With regard to notice, we find no provision within the lease which obligated lessee to serve written notice in order to preserve its right to seek enforcement of the covenants of the lease. With regard to *laches*, defendant has drawn our attention to *Pyle v. Ferrell*, 12 Ill.2d 547, 552, 147 N.E.2d 341, wherein the doctrine of *laches* was defined as follows:

> "* * * Laches is, therefore, such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. * * *"

Our Supreme Court stressed in *Pyle* that, contrary to statutory limitations, the pertinency of the doctrine of *laches* depends upon whether a litigant's dilatory tactics resulted in an adverse change of position by the other litigant, *i.e.*, whether prejudice was incurred. In the case at bar, since defendant has failed to introduce any evidence of prejudice resulting from plaintiff's alleged lack of diligence, we conclude that the *laches* doctrine is inapplicable.

■■ Defendant contends that it substantially discharged its obligations under the lease and that, regardless, plaintiff failed to prove damages. We do not agree that the blacktopping of the parking areas and of the access road was substantially performed. The evidence was undisputed that large areas northeast and northwest of the Goldblatt store were unpaved and remained as unsightly raw land which hindered vehicular traffic within the shopping center. The road fell short of the paved portions of the shopping center by 15 to 50 feet, thus requiring potential customers to either use the Lake Street entrance or traverse 15 to 50 feet of unimproved land. This is not substantial performance. As to damages, plaintiff introduced expert testimony in an attempt to establish the extent of damage attributable to defendant's failure to complete the

access road and the other paving. Plaintiff's expert successfully testified that two factors determining the success of a shopping center are accessibility and attractiveness. However, the court sustained an objection to the expert witness' opinion that the failure to pave in accordance with the plat of survey had caused and would continue to cause "substantial detriment to the value of the leasehold." An offer of proof was made and rejected, apparently on the court's assumption that the extent of damage was immaterial to plaintiff's cause of action. This assumption was erroneous. The proffered opinion was clearly competent and material evidence which should have been admitted by the trial court. In determining whether the court's decree was justified by the evidence, we must therefore treat the expert's opinion as if it had been admitted into evidence. (*Gundich v. Emerson-Comstock Co.*, 24 Ill.App.2d 138, 143, 164 N.E.2d 512; *Belorodker Loan & Investment Co. v. Goldenberg*, 253 Ill.App. 416; *Gustin for use of Atwood v. Bryden*, 205 Ill.App. 204.) Based on this opinion, on the population projections admitted into evidence and on the photographs clearly indicating the strategic benefits to be accrued from a rear access road and paving in accordance with the plat of survey, we conclude that plaintiff made a *prima facie* showing of damages caused by defendant's failure to complete its undertakings. Defendant's evidence that the existing parking areas south of the store were adequate to accommodate all vehicles was not responsive to the theory that a rear access and rear and side parking would have attracted customers from Addison Road and from the residential property to the north of the shopping center. Plaintiff thus established damages requiring equitable relief in the nature of specific enforcement. In view of our earlier conclusion that defendant did not substantially discharge its paving obligation, we hold that the trial court's decree, insofar as it refused to order specific performance of that obligation, was not justified by the evidence.

■■ With regard to defendant's failure to provide 1000 suitable parking spaces, we note that plaintiff failed to introduce any evidence regarding the damages allegedly incurred from the deficiency of approximately 300 spaces. Defendant, however, produced a number of witnesses who testified that, aside from opening day, the existing parking lot at the shopping center was more than adequate to accommodate all customers. Under these circumstances, we believe that the trial court's decree, insofar as it denied equitable relief at this time for the failure to provide 1000 parking spaces, was justified by the evidence.

We affirm the dismissal of Count I and Count II of plaintiff's complaint. We affirm the denial of equitable relief, requested in Count III, for defendant's failure to provide 1000 parking spaces. We reverse the denial

of equitable relief also requested in Count III, for defendant's failure to pave as per the plat of survey and remand for entry of an order granting that requested relief of specific enforcement.

Affirmed in part, reversed and remanded in part with directions.

SCHWARTZ and LEIGHTON, JJ., concur.

### SUPPLEMENTAL OPINION UPON REHEARING

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant has filed a Petition for Rehearing, alleging four errors in the foregoing opinion. We believe that only one of the allegations of error merits supplementary discussion.

In concluding that plaintiff made a *prima facie* showing of damages resulting from defendant's failure to discharge its paving obligations (Count III), we considered, in addition to other evidence, expert testimony which had been erroneously excluded by the trial court. We did so on the authority of the following cases: *Gundich v. Emerson-Comstock Co.*, 24 Ill.App.2d 138, 143, 164 N.E.2d 512; *Belorodker Loan & Investment Co. v. Goldenberg*, 253 Ill.App. 416; *Gustin for use of Atwood v. Bryden*, 205 Ill.App. 204. Defendant contends that our consideration of the erroneously excluded testimony deprived it of any opportunity to meaningfully cross-examine the expert witness and to offer evidence in rebuttal. It is suggested that, under the circumstances, the proper disposition would be a remand for a new trial or for a limited hearing upon the special issues involved in the admitted proof.

■■■ Defendant has not attempted to distinguish the cited cases; nor do we think they can be distinguished from the case at bar. Nonetheless, after reconsidering the policy arguments supporting and opposing the right of a court of review to weigh evidence wrongfully excluded by the trial court and then to proceed to a factual determination without remand, we conclude that such a practice does raise substantial questions of fairness and due process of law. We also note that an early Illinois Appellate Court case, *Traders Ins. Co. v. Catlin*, 71 Ill.App. 569, which has been neither overruled nor distinguished by subsequent cases, held that a court of review cannot make determinations of fact based on testimony rejected at trial. We now question the correctness of the Illinois cases to the contrary. However, this position does not necessarily require that we remand for a new trial or special hearing, but merely that, in evaluating the weight of the evidence, we assess only that evidence admitted by the trial court.

 It was noted in our original opinion that plaintiff's expert witness was allowed to testify that two factors determining the success of a shopping center are accessibility and attractiveness. He further testified that the sharp population increases in the area surrounding the subject shopping center would continue during the 1970's and 1980's. Also admitted into evidence were photographs of the shopping center, reflecting the strategic benefits to be accrued from a rear access road and paving in accordance with the plat of survey. We believe that this evidence alone was sufficient proof that plaintiff incurred damages as a result of defendant's failure to complete its undertakings. The trial judge made a similar observation prior to affording plaintiff an opportunity to submit an offer of proof. He stated:

> "I will tell you, so far as I'm concerned, I assume that it is beneficial to Goldblatt's generally to have the whole area paved rather than be unimproved and vacant. I assume that that is a fact. I don't know that it need be proved."

Therefore, we reaffirm our statement in the original opinion that plaintiff made a *prima facie* showing of damages, that defendant's evidence was not to the contrary, and that the trial court's decree, insofar as it refused to order specific performance of the paving obligation as per the plat of survey, was not justified by the evidence.

Affirmed in part, reversed and remanded in part with directions.

SCHWARTZ and LEIGHTON, JJ., concur.