(83 App. Div. 319.)

### TANENBAUM v. LEVY et al.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. CONTRACT—AMBIGUITY—EVIDENCE.

> It being left doubtful by a contract, authorizing plaintiff and his partner to procure the insurance for all defendants' property "located outside the premises specifically named hereinbefore," whether this referred to property outside as well as in the state, a letter written by plaintiff after the contract was made, in which he sought to obtain the right to insure property outside the state, and testimony of his partner that the inclusion of such property was never contemplated, are admissible.

Appeal from Trial Term, New York County.

Action by Moses Tanenbaum against Abraham Levy and others. From a judgment on a verdict directed for plaintiff, and from an order denying a motion for a new trial, defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

A. Blumenstiel, for appellants.

Leo N. Levi, for respondent.

O'BRIEN, J. This is an action to recover damages for breach of a written agreement made in February, 1898, between the firm of I. Tanenbaum, Sons & Co., insurance brokers, then composed of plaintiff and Samuel L. Bear, and the defendants, who were doing busines under the firm name of A. & M. Levy. Shortly after the contract was made, Bear retired from the firm, assigning all his rights to the plaintiff. The agreement, in form, was similar to that involved in Tanenbaum v. Greenwald, 67 App. Div. 473, 73 N. Y. Supp. 873, and the frequency with which these contracts made by the firm of I. Tanenbaum, Sons & Co. with their customers have been before this court, and the many questions relating to them which have been litigated, renders it unnecessary for us to more than state briefly our conclusions upon the record before us.

With respect to the rulings made upon the measure of damages, the character of the evidence admitted in support of the claim for damages, the refusal to dismiss the complaint upon the ground that the contract was not assignable, and that upon the retirement of Bear from the Tanenbaum firm the defendants' obligation to continue the agency with the plaintiff ceased, and to the other questions which have been urged on the appellants' brief, we think, with one exception, that all were properly disposed of by the learned trial judge. This one exception relates to the allowance to the plaintiff of $705.68 commissions upon the amount of insurance on the Patterson property.

The plaintiff based his right to receive these commissions upon the fifth clause of the contract, which provides that "the said parties of the first part shall procure for the parties of the second part all other and floating, casualty and additional insurance which they may require upon any and all property required to be or which may be insured by the parties of the second part contained and located outside of the premises specifically named hereinbefore at current tariff

rates of insurance." It will thus be seen that plaintiff's right to such commissions depends upon the construction to be given to the words, "located outside of the premises specifically named hereinbefore." Did these words give the plaintiff the right to effect insurance on all the property of the defendants, wherever situated, within or without the state?

Reading the entire contract to ascertain the intent of the parties as to the meaning which they gave to the words employed in the agreement, we think that either view can be taken, viz., that it was intended thereby to refer to other property within this jurisdiction, or that the contract was not necessarily restricted by any such limitation. We think that the words were open to explanation, because ambiguous and doubtful. Under such circumstances, the construction which the plaintiff himself placed upon the language used is important, and in this connection the letter written by him after the contract was made, and in which he sought to obtain the right to effect insurance upon the Patterson property, would indicate that his view at that time was that he had no such right under the contract. So, too, we have the testimony of Mr. Bear, who knew of the existence of the Patterson property at the time the agreement was executed, that the inclusion of such property was never contemplated. We do not think that the plaintiff's letter, nor this evidence received and subsequently ruled out, tended to vary or contradict the contract, but rather was in explanation of a clause, the meaning of which, at best, was doubtful. This evidence, which should have been admitted, made it a question for the jury. Having, however, been stricken out, the defendant is entitled, in the absence of any evidence to the contrary, to the benefit of the inference that it was not intended by the parties to include the Patterson property.

Thinking as we do, therefore, that it was error to strike out this evidence and to direct a verdict for commissions upon this property, it follows that such amount should be deducted from the verdict; and, unless the plaintiff will so stipulate, the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event, otherwise, upon plaintiff giving the stipulation, the judgment should be modified in this respect, and, as so modified, should, together with the order appealed from, be affirmed, without costs. All concur.

---

PEOPLE ex rel. STUPP et al. v. CITY OF AUBURN et al.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. MUNICIPAL ELECTIONS—CITY CHARTER—CHANGE—OFFICERS—TERMS.

Laws 1879, pp. 73, 75, c. 53, §§ 6, 17, provided for the election of Auburn city officers in March of each year, their terms of office to commence on the Monday following their election; and section 5 provided that the terms of office of the recorder, city judge, and justice of the peace should be four years. By Laws 1896, p. 641, c. 520, the time of holding the election was changed to November, and the time of commencement of the terms was changed to the 1st day of January after the election, to extend for the same time as previously provided. Section