William B. Groat, J.
The plaintiff is a tenant of the defendants Benjamin Braunstein, Harry Neisloss, and Benjamin Neisloss doing business under the firm name and style of B-H-B Associates, herein called B-H-B. The defendant Dilhert Quality Super-Markets, Inc., herein called Dilhert, is also a tenant of B-H-B. Plaintiff seeks to enjoin B-H-B from filing plans for, and the construction of, a supermarket building on certain land leased by B-H-B under a ground lease on the west side of Union Street between 31 Road and 28 Avenue, Flushing, New York, and to enjoin and restrain Dilhert from conducting, operating or using the land, upon which the proposed building is to be erected, as a supermarket. Both plaintiff and defendant *506 Dilbert are in similar businesses; they both operate chains of retail supermarkets.
Plaintiff is a tenant in store No. 11 and basement in a one-story building also on the west side of said Union Street between 31 Road and 28 Avenue, under an assignment of lease dated April 21, 1952 and an agreement dated May 22, 1952 between B-H-B and Food Town, Inc., plaintiff’s assignors, for the purpose of conducting and operating a supermarket thereat. The plaintiff is one of 17 store tenants of the defendant at that location, none of whom is in the same line of business as the plaintiff.
The plans attached to plaintiff’s lease outline the disputed premises, which lie on the west side of Union Street between 31 Road and 28 Avenue in Flushing, New York. The land has a total frontage of approximately 554 feet and a depth of approximately 254 feet over most of the land. The building on the northwest portion of said land, in which plaintiff’s supermarket is located, has a frontage on said west side of Union Street of approximately 340 feet with a depth of approximately 100 feet. To the south of that building is a driveway, and to the south of the driveway there is vacant land fronting the said west side of Union Street approximately 168 feet to a depth on both sides of approximately 100 feet. The area of this vacant parcel is 18,679 square feet. It is contained within the perimeter of the lands shown on the said plans. In addition and contiguous to this 18,679-square-foot parcel there is a parcel of real estate which the record shows has an area of 1,320 square feet. The total area of both these parcels is approximately 20,000 square feet.
The parking area is in the rear of all lands of the defendant B-H-B shown on the plan.
The lease between the plaintiff and the defendant B-H-B is for 15 years, expiring on April 20, 1967. It is a percentage lease, the rent being 1%% of the annual gross receipts of the plaintiff from the conduct of its supermarket at the demised premises with a minimum payment of $16,560 per annum.
From March 19,1953 to December 19,1958, percentage rentals paid by plaintiff to B-H-B over and above the minimum rent of $16,560 per annum were as follows:
1953 ...........................$1,784.40 1954 ........................... 3,720.56 1955 ........................... 8,200.90 1956 ........................... 8,544.17 1957 ........................... 7,408.88 1958 ........................... 7,599.64,
*507 The said lease contains covenants restricting the plaintiff from operating a supermarket within a radius of two miles of the demised premises and also from selling certain types of merchandise therein.
Paragraph Fifty-first of the lease contains the following covenants restricting B-H-B from leasing to others in the same line of business as the plaintiff:
“ The Landlord agrees that during the term of this lease and provided this lease is in force and the Tenant is not in default thereunder, the Landlord will not lease, use or consent to the use of any portion of the premises in the building of which the demised premises is one of the stores for a food super-market, a food super-market intending to be a large departmentalized self-service general food market, fruit and vegetable market, it being further agreed that the Landlord will not rent any store in the building on the said premises of which the present structure constitutes a part to a non-Kosher butcher or for a retail grocery store, except that a grocery store shall not be defined to include a Kosher or German type delicatessen and/or appetizer store.
“ The Landlord further agrees that in the event said Landlord or any firm or corporation in which any or all of the individual Landlords are interested takes title to the property approximately opposite the Mitchell Gardens Housing Project, to wit, on the East side of Union Street, and improves same, that they will not build any store to be used for a super-market provided this lease is in full force and effect.”
With respect to the maintenance of a parking area for the use of plaintiff’s customers as a nonexclusive right, paragraph Fifty-third of the lease provides as follows: “ The Tenant understands that the premises demised hereunder is one of a group of stores to be erected by the Landlord, and provided the Tenant is not in default hereunder, there will be maintained a parking space indicated on the plans (hereinafter called ‘ parking area ’) and driveways appurtenant to the demised premises for the purpose of ingress, egress, parking of motor vehicles for shoppers only, and loading and unloading of vehicles in connection with and incidental to the business conducted by the Tenant on the demised premises. The said parking area, however, is to be used by the shoppers of the Tenant as a non-exclusive right, together with the right to the use of the said parking area by others, of all other lands and buildings shown on the plans, and the respective shoppers, invitees of the said Tenants and occupants, and the loading and unloading of vehicles in connection with and incidental to the business *508 conducted by other Tenants and occupants of all other lands and buildings shown on the plans in connection with said parking area. The Landlord may impose such rules and regulations from time to time for proper management and maintenance, use and regulation of use of the said parking area. The Landlord further agrees that at all times during the term of this Lease, without cost and expense to the Tenant ”.
In addition to the rent set forth above, plaintiff is obligated to pay as additional rent any increase in real estate taxes above the tax for the base period. In that connection paragraph Sixtieth, subdivision (c) of the lease reads as follows: “ At the Landlord’s option, the Landlord may cause the demised premises hereunder to be apportioned as a separate tax lot, or the Landlord may include the demised premises as part of a tax lot which comprises a greater area than that of the demised premises. In the latter event the Tenant shall be required to pay the increased taxes, as hereinbefore defined, in proportion to which the frontage of the demised premises facing Union Street bears to the entire frontage of such tax lot facing Union Street. ’ ’
The commencement of the term of the lease was conditioned upon there being at least 750 families in the Mitchell Gardens Housing Project. The lease also provides that the plaintiff shall expend the sum of at least $70,000 for fixtures and equipment in its supermarket and that it will diligently conduct its business, maintain a substantial stock of merchandise and a reasonable number of employees for such purpose.
In the schedule of specifications attached to the lease, item 12 provides “ parking space to be for customers only, illuminated and covered with black top.”
Defendant Dilbert admits that it was aware of plaintiff’s lease and contents thereof prior to making its lease with B-H-B.
Subsequent to making the lease with plaintiff’s assignor and the assignment thereof, B-H-B leased to Dilbert, some time after June 4, 1958, the two parcels immediately south of the building in which plaintiff’s supermarket business is located, comprising approximately 20,000 square feet in area as described above. B-H-B agreed to erect a supermarket store on such lands for the defendant Dilbert.
Defendants contend that the 18,679-square-foot parcel was not owned or leased by B-H-B at the time that plaintiff’s assignor entered into its lease with B-H-B on April 21, 1952, nor was it owned or leased by B-H-B when plaintiff’s lease was assigned to it on November 10, 1952. This parcel, however, was owned at that time by the defendants Benjamin Braun *509 stein, Harry Neisloss and Benjamin Neisloss as trustees under a trust indenture dated May 23, 1951, and as trustees they continued to own the property until June 4, 1958. The 1,320-square-foot parcel was owned by B-H-B but was conveyed to the partners individually as trustees under said trust indenture in January, 1957. On June 4, 1958 the partners resigned as trustees under said trust indenture and successor trustees were appointed. The successor trustees thereafter leased the total 20,000 square feet to B-H-B.
Benjamin Braunstein, Harry Neisloss and Benjamin Neisloss, as trustees, are the same persons who are the partners doing business as B-H-B and are defendants in this action.
The 18,679-square-foot parcel was zoned residential at the time plaintiff’s lease was entered into and remained so until November 17,. 1955 when it and the 1,320-square-foot parcel were changed to “retail district” upon the joint application of B-H-B and the said successor trustees. The land on the east side of Union Street, which is also covered by the restrictive covenant, was also zoned residential at the time of plaintiff’s lease. It remained zoned residential.
Defendant Dilbert caused a sign to be placed on the said 20,000-square-foot parcel announcing the opening of a supermarket in the building to be erected on that site by B-H-B. Thereupon plaintiff protested Dilbert’s proposed use and occupancy and brought this action, although no plans had yet been filed and no construction work had been commenced.
The plaintiff contends that Dilbert’s lease and the proposed construction of the said supermarket building violate the restrictive covenants contained in its lease with B-H-B and, unless restrained, will result in irreparable damage.
The court finds that notwithstanding the various entities in whom title is vested, their close identity with B-H-B was such that for the purpose of this action B-H-B owned or controlled all of the lands involved herein as shown on the plans attached to the lease.
The court also finds that the plaintiff and defendant Dilbert are competitors, and that if Dilbert were to operate a supermarket virtually adjacent to that of plaintiff, the plaintiff’s business would suffer irreparable injury.
Bead in context with all of the terms of the lease, the surrounding circumstances and the subject with which it deals, paragraph Fifty-first thereof relating to the landlord’s restriction is not as clear and definite insofar as the area of restriction is concerned as defendants contend. (Tallcot v. Arnold, 61 N. Y. 616; Gillet v. Bank of America, 160 N. Y. 549, 555, 556; Genet *510 v. Delaware & Hudson Canal Co., 163 N. Y. 173, 179; Sattler v. Hallock, 160 N. Y. 291; Tanenbaum v. Levy, 83 App. Div. 319; Mecca Realty Co. v. Kellogg Toasted Corn Flakes Co., 166 App. Div. 74.)
In determining the over-all intent of the parties to the lease, consideration must be given to the fact that the plaintiff is required to pay as additional rent increased real estate taxes, not only on the land and building occupied by its supermarket, but that upon which the proposed Dilbert supermarket is to be erected. In addition, while the lease contains a restriction prohibiting B-H-B from building a store for supermarket purposes on any land that B-H-B or any firm, corporation or any of the individual landlords are or may be interested in across the street, the lease is silent on lands virtually adjacent to plaintiff’s supermarket, which lands were likewise owned by B-H-B.. ■ ! i
In view of all of the facts and circumstances in this action, the lease and the subject matter with which it deals, the court is of the opinion that the restriction against B-H-B in paragraph Fifty-first of the lease was intended by the parties to extend to the entire premises shown on the plans attached to that lease, which includes the plot on which the Dilbert supermarket is to be built. (Gillet v. Bank of America, 160 N. Y. 549, supra; Robertson v. Ongley Elec. Co., 146 N. Y. 20; Maloney v. Iroquois Brewing Co., 173 N. Y. 303; Middleworth v. Ordway, 191 N. Y. 404; Benvenuto v. Rodrigues, 279 App. Div. 162; Atwater Co. v. Panama R. R. Co., 246 N. Y. 519.)
Moreover, while the court cannot make a new contract for the parties, the courts of this State are the leading exponents of the just doctrine that ‘ ‘ in every contract there exists an implied covenant of good faith and fair dealing” (Kirke La Shelle Co. v. Armstrong Co., 263 N. Y. 79, 87) and that ‘ ‘ A contract includes not only what the parties said but also what is necessarily to be implied from what they said. ’ ’ (Grossman v. Schenker, 206 N. Y. 466, 469; Wood v. Duff-Gordon, 222 N. Y. 88.)
Accordingly, judgment is rendered in favor of the plaintiff restraining the defendants Harry Neisloss, Benjamin Neisloss and Benjamin Braunstein, individually and as copartners transacting business under the name and style of B-H-B Associates, their architect, servants, agents and/or employees from filing building plans with the Building Department of the City of New York, or with any other governmental agency, for the construction of a supermarket on the premises referred to herein, and further enjoining and restraining said defendants *511 from constructing or proceeding with the construction of such a supermarket, and enjoining and restraining Dilbert Quality Super-Markets, Inc., their officers, servants, agents or employees from conducting or operating or using the afore-mentioned premises as a supermarket.
Submit judgment on two days’ notice.