[No. F004311. Fifth Dist. Aug. 23, 1985.]

EDMOND'S OF FRESNO, Plaintiff and Respondent, v.
MacDONALD GROUP, LTD. et al., Defendants and Appellants.

600

**COUNSEL**

O'Melveny & Myers, Richard E. Sherwood and John C. Rawls for Defendants and Appellants.

Caswell, Bell & Sullivan, Robert L. Sullivan, Jr., and James D. Burnside for Plaintiff and Respondent.

**OPINION**

**FRANSON, Acting P. J.**—Appellants MacDonald Group, Ltd., et al., appeal from a judgment permanently enjoining them from leasing premises in the new mall addition of Fresno Fashion Fair to any retail jewelry business during the term of the lease held by respondent Edmond's of Fresno for a store in the original mall.

The facts giving rise to the injunction are as follows: Respondent Edmond's of Fresno (Edmond's) is a California corporation engaged in the business of selling retail jewelry. In May 1968, Edmond's conducted negotiations with agents for appellant Triple "F" Investments (Triple F) to secure space for a new Edmond's store within a shopping center then being developed by Triple F, known as Fresno Fashion Fair. Construction on the 55-acre site had not yet begun. Consequently, negotiations were conducted through reference to site plans showing the proposed locations of a single enclosed mall structure surrounded by a parking area and several small outbuildings.

Respondent insisted upon assurances that only two retail jewelry stores would be allowed to lease space in the shopping mall. Appellant agreed and had its leasing agent prepare a lease agreement containing such a clause.

On March 17, 1969, respondent entered into a written agreement with Triple F to lease approximately 5,000 square feet of space within the original enclosed mall of Fresno Fashion Fair through December 31, 1990. Article 36 of the agreement set forth the limitations on Triple F's right to lease space to respondent's potential competitors: "Provided Tenant not be in default under this Lease, Landlord agrees that there shall be not more than two jewelry stores located in Fresno Fashion Fair, one of which shall be the operation conducted by Tenant. It is agreed, however, that this exclusive shall in no way pertain to the buildings labelled 'A,' 'A-1,' 'B,' 'C,' or 'C-1,' or to any other department or junior department store such as F. W. Woolworth Company; nor shall this exclusive in any way prevent or preclude the incidental sale of jewelry items by other tenants in Fresno Fashion Fair."

Fresno Fashion Fair opened for business in 1970. From the opening until the time the lawsuit was filed, the center contained only two retail jewelry stores, Edmond's and Rogers Jewelers. Jewelry sales departments also have existed within the major department stores.

In 1978, Triple F's managing general partner, MacDonald Group, Ltd. (MacDonald), began to consider expanding the shopping center. It acquired

an 11½ acre parcel of land, then being used as a drive-in theater, which was located immediately adjacent to the original western boundary of Fresno Fashion Fair. Later, MacDonald resold this parcel to R. H. Macy's Co. (Macy's) for use as the site of a Macy's department store. Ultimately, plans were formulated for construction of a new enclosed mall linking the proposed Macy's department store with J. C. Penney, the western anchor of the original Fresno Fashion Fair.

Construction began on the Macy's department store and the new mall in 1982. Approximately 80 percent of the new mall is situated on land that falls within the original boundaries of Fresno Fashion Fair, on property that formerly had been part of the parking lot and Penney's garden shop. The remaining 20 percent is situated on the Macy's parcel.

The instant dispute arose when appellants indicated that they would lease space in the addition to other retail jewelers. In April 1983, counsel for Edmond's informed MacDonald of its contention that article 36 prevented appellants from leasing space in the new mall to any other retail jeweler. MacDonald disputed the contention, claiming that article 36 applies only to the original mall, not to the addition.

Thereafter, respondent filed this suit seeking to enjoin appellants from leasing property in the new addition to any other retail jewelry business during the term of respondent's lease. A preliminary injunction issued in July 1983, which granted respondent interim relief pending trial on respondent's request for a permanent injunction. The case came on for trial on May 3, 1984.

At trial, Doris Edmonds testified she was secretary of respondent corporation when the lease was negotiated for the Fashion Fair store. She testified that during the negotiations she understood the term "Fresno Fashion Fair" to mean the entire regional shopping area, rather than any one building or portion of the shopping center. She did not take part in any specific discussions about possible future expansion of the shopping center.

At the conclusion of the trial, the court found that article 36 was applicable to the expansion of the shopping center as well as the original mall. The court found the intent of the parties was for article 36 to apply to Fresno Fashion Fair as one entity, stating it would be unreasonable to conclude the parties would have intended that the landlord could acquire additional properties immediately adjacent to the site, build new stores, integrate them into Fresno Fashion Fair, and not be subject to article 36. The court also found that a permanent injunction was an appropriate remedy under the circumstances, because the amount of damages sustained by Edmond's as a result of the breach of article 36 would be extremely difficult to ascertain.

## Discussion

I. *The trial court properly found that article 36 applied to the new development.*

 Appellants contend the trial court erred in finding that article 36 of the lease agreement was applicable to the new development at Fresno Fashion Fair. They claim the evidence established that the expansion of the center was never contemplated or discussed by the parties at the time of contracting. Consequently, they argue that the record will not support the court's expansive application of article 36.

 This court is not bound by the trial court's interpretation of the lease agreement. The interpretation of a written document is a question of law, not of fact. In the absence of conflicting extrinsic evidence, a reviewing court must independently interpret the written instrument. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Wemyss* (1975) 49 Cal.App.3d 53, 59 [122 Cal.Rptr. 134].)

 "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) Furthermore, when the contract is reduced to a writing, the intention of the parties should be ascertained from the writing alone, whenever possible, and by viewing the contract as a whole, not merely focusing upon any clause standing alone. (Civ. Code, §§ 1639 and 1641.)

 Here, article 36 fails to explicitly apply itself to the new addition. It simply states, ". . . Landlord agrees that there shall be not more than two jewelry stores located in Fresno Fashion Fair . . . ." Likewise, no other clauses in the agreement explicitly state whether the lease, in general, applies to a subsequent expansion of the shopping center. The lease does provide that Edmond's may not operate a competing business within a three-mile radius of the shopping center.

Still, other portions of the agreement include contingencies for expansion, suggesting that the agreement was intended to relate to subsequent development of the center. Article 2 of the lease describes the general outline of the site by reference to an exhibit as follows: "Exhibit 'A'—General site plan of an integrated retail shopping center to be known as 'Fresno Fashion Fair', which Landlord and others intend to construct or cause to be constructed on approximately 55 acres of land in the City of Fresno, County of Fresno, State of California, and being located on the south side of Shaw

Avenue and the west side of North First Street in said city. Said site plan shows, among other things, the principal improvements which will comprise said shopping center. Tenant acknowledges that the site plan shown on Exhibit 'A' is tentative and that Landlord may change the shape, size, location, number and extent of the improvements shown thereon and eliminate or add any improvements to any portion of Fresno Fashion Fair, provided that Landlord shall not change the size or location of the demised premises without Tenant's consent." The lease goes on to designate the shopping center as Fresno Fashion Fair in at least 16 different places.

Article 19 of the lease states in pertinent part: "Should Landlord, by means of lease or otherwise, acquire additional land not shown as part of Fresno Fashion Fair on Exhibit 'A' and make the same available for employee parking or other common area purposes, then said expenses in connection with said automobile parking and common areas shall also include all of the aforementioned expenses incurred and paid in connection with said additional land." The term "automobile parking and common areas" is defined in article 31 of the lease to include *"malls, and all common areas within Fresno Fashion Fair, . . ."* (Italics added.) Thus, the lease anticipates expansion and provides that respondent is obligated to pay a pro rata share of the common expenses for any addition to the center.

More importantly, articles 19 and 31, when read together, impliedly incorporate any future development within the designation "Fresno Fashion Fair." Significantly, article 19 refers to after-acquired property as "additional land *not shown as* part of Fresno Fashion Fair" (italics added), rather than simply as *not part of* Fresno Fashion Fair. Had landlord, the drafter of the lease, intended to exclude areas outside the original 55-acre parcel from the denomination—Fresno Fashion Fair, it could have done so by merely stating that the additional land was "not part of" Fresno Fashion Fair. Instead, drafter's language permits the additional inference that land not shown as part of Fresno Fashion Fair in exhibit A is, nonetheless, part of the shopping center. This latter inference is further strengthened by the purpose of the clause, which along with article 31, imposes upon the existing tenants of Fresno Fashion Fair, the obligation to pay operating expenses for the common areas of any additional development. Furthermore, construing article 19 under the rule that any uncertainties in the construction of a contract will be resolved strictly against the party who prepared the document (Civ. Code, § 1654; *Carter* v. *Adler* (1955) 138 Cal.App.2d 63, 71-72 [291 P.2d 111]), we conclude that article 19 was intended to implicitly define areas developed in addition to the original 55-acre parcel as within the designation "Fresno Fashion Fair." Since the restrictive covenant in article 36 applies to all of Fresno Fashion Fair, then it must also be interpreted to apply to the new development.

■ Appellants' citation to several cases holding that restrictive covenants are strictly construed against the party seeking to enforce them (*White* v. *Dorfman* (1981) 116 Cal.App.3d 892, 897 [172 Cal.Rptr. 326]; *Welsch* v. *Goswick* (1982) 130 Cal.App.3d 398, 406 [181 Cal.Rptr. 703]; *Hudson Oil Co.* v. *Shortstop* (1980) 111 Cal.App.3d 488, 496 [168 Cal.Rptr. 801]; *Sain* v. *Silvestre* (1978) 78 Cal.App.3d 461, 474 [144 Cal.Rptr. 478], disapproved on another point in *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83]) is misplaced. These cases involved suits between successive owners to enforce building or land use restrictions rather than suits to enforce covenants against competition between the original contracting parties as in the instant case. (See also Civ. Code, § 1470 which only applies when a land use restriction is applied to a successor in interest.) Moreover, as explained in *Ezer* v. *Fuchsloch* (1979) 99 Cal.App.3d 849, 861 [160 Cal.Rptr. 486, 13 A.L.R.4th 1333]: "The disjointed, single-paragraph, strict construction approach to a restrictive-covenant-document interpretation . . . is unacceptable in light of the fact that '[t]here is no doubt that these rules are correct so far as they go, but they give only part of the picture.' [Citation.] A limitiation [*sic*] on the rule of strict construction of restrictive covenants [is] as follows: '[T]he intent of the parties and the object of the deed or restrictions should govern, giving the instrument a just and fair interpretation.' [Citation.]" *Great Atlantic and Pacific Tea Company* v. *Bailey* (1966) 421 Pa. 540 [220 A.2d 1] also cited by appellant, for the proposition that restrictive covenants on the use of land are disfavored and will not be enforced unless plainly stated, is based on a peculiar Pennsylvania rule which gives a narrow effect to land use restrictions (220 A.2d at pp. 2-3). This does not represent California law. (See dis. opn. in *Great Atlantic and Pacific Tea Company* v. *Bailey, supra,* 220 A.2d at pp. 6-7, citing *Carter* v. *Adler, supra,* 138 Cal.App.2d 63.)

II. *The restrictive covenant is also made applicable to the new development by the implied covenant of good faith and fair dealing.*

■ "It is well settled that, in California, the law implies in *every* contract a covenant of good faith and fair dealing. [Citations.] Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158]; see also Rest.2d Contracts, § 205, p. 99.) The covenant of good faith and fair dealing will not permit either a lessee or a lessor to avoid liability for damages under a percentage rental lease where either party conducts a competing business on adjacent premises causing a reduction of the gross receipts on the demised premises. (*Carter* v. *Adler, supra,* 138 Cal.App.2d 63, 73; *Daitch Crystal Dairies, Inc.* v. *Neisloss* (1959) 16

Misc.2d 504 [185 N.Y.S.2d 188, 194]; *Parker v. Lewis Grocer Company* (1963) 246 Miss. 873 [153 So.2d 261, 275-276].)

In *Carter v. Adler, supra,* 138 Cal.App.2d 63, landlords appealed from a judgment declaring that a lease prevented them from operating a supermarket on land acquired after tenant's lease was signed and which adjoined tenant's supermarket. Tenant's lease, executed in 1951 with landlords' predecessors in interest, covered a parcel of land known to the public as "Valley Market Town" (hereafter Parcel 1). The lease required tenant to pay minimum rent plus a percentage of the gross receipts which exceeded $50,000 per month. The lease gave the tenant the exclusive right to sell groceries, meats, produce, fish and poultry in "'Valley Market Town, located at 6127 Sepulveda Boulevard, Van Nuys, City of Los Angeles, . . .'" (*Id.,* at p. 66.) The lease further provided that if the combined gross volume of sales fell below the sum of $50,000 for a period of two months, then lessors would have the right to cancel the lease upon giving a thirty-day written notice.

In 1953, landlords purchased Parcel 1 from predecessors in interest. At the same time, landlords acquired a long term lease on an unimproved parcel of land which adjoined Parcel 1 (hereafter Parcel 2). Landlords' purpose in acquiring both properties was to increase the area of Valley Market Town, build a second market there and operate the entire area under the name of "Valley Market Town" or "Mr. Carter's Market Place." After tenants refused to relinquish their exclusive rights under the lease, landlords filed an unsuccessful action for declaratory relief which was later affirmed on appeal.

The Court of Appeal concluded that landlords' proposal to erect a supermarket on Parcel 2 was designed to reduce the gross sales of tenants below $50,000 for two months and thereby allow landlords to terminate the lease. The court said:

". . . it [can]not be questioned that for appellants to set up a commercial establishment in direct competition with their tenants would be a violation of the good faith pledged when [predecessors in interest] granted respondents the exclusive right to sell the specified merchandise in Valley Market Town. The mutual covenants of the lease abhor the very suggestion of such conduct as that proposed by appellants.

". . . . . . . . . . . . . . . . . . . . .

"A restrictive covenant, such as the grant of the exclusive mercantile rights to respondents, is not merely ornamental words, inserted to please

the eye. It is a living expression of the grantor incorporated in a lease as a consideration for the lessee's faithful performance. Concomitant with such a covenant is the implied obligation of the lessor not to cancel the covenant or derogate from its force by so using his adjoining property as substantially to impair the lessee's enjoyment of the leased premises." (*Carter* v. *Adler, supra,* 138 Cal.App.2d 68, 70.)

Appellants attempt to distinguish *Carter* on the basis that the lease also contained the provision allowing lessors to cancel the lease if gross receipts fell below $50,000 for two consecutive months. Thus, appellants argue that in *Carter* lessors' actions violated the covenant of good faith and fair dealing by attempting to drive lessees out of business entirely. Suffice it to state that a violation of the covenant of good faith and fair dealing can occur based upon less onerous behavior as long as one party to an agreement merely attempts to deprive another party of the benefits of the agreement. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, 768.) As the following case exemplifies, actions which would merely cause one party to suffer reduced profits from the demised premises is sufficient to violate the covenant.

In *Daitch Crystal Dairies, Inc.* v. *Neisloss, supra,* 185 N.Y.S.2d 188, tenant, a supermarket proprietor, brought an action to enjoin another supermarket proprietor from operating a market on land owned by landlord which was located virtually adjacent to tenant's market. Landlord acquired the land six years after he had signed the lease with tenant. The newly acquired parcel was contained within the perimeter of lands shown on a site plan which was attached to tenant's lease.

Tenant's lease only expressly prohibited landlord from permitting another market in the same building which tenant occupied or on a third parcel owned by landlord which was located across the street. Interestingly, the lease therein required tenant to help pay the real estate taxes on the newly acquired parcel. Although the restrictive covenant did not expressly encompass the adjacent parcel, the Supreme Court of New York held, in part, that the covenant of good faith and fair dealing implied the restriction should apply to the adjacent property as well. (*Id.,* at p. 194.) ". . . while the Court cannot make a new contract for the parties, . . . 'In every contract there exists an implied covenant of good faith and fair dealing' [citation] and . . . '[a] contract includes, not only what the parties said but what is necessarily to be implied from what they said.'" (*Ibid.*)

In the present case, it is reasonable to assume that permitting a competitor to operate a competing business in the new mall adjoining Macy's would create additional competition for Edmond's and would ultimately cause a

reduction in the benefits which Edmond's would otherwise derive from the demised premises. As in *Daitch Crystal Dairies, Inc.* v. *Neisloss, supra,* 185 N.Y.S.2d 188, Edmond's is obligated under the lease to pay a portion of the common expenses for the new development. Over 80 percent of the new mall is located within property which was part of the original Fresno Fashion Fair development. Finally, Edmond's is proscribed by the lease from operating a similar business within three miles of Fresno Fashion Fair. Under these circumstances, it is reasonable to conclude that the covenant of good faith and fair dealing extends to the entire development appellants' reciprocal promise not to lease space within Fresno Fashion Fair to another directly competing business.

The case principally relied upon by appellants, *Goldblatt Bros., Inc.* v. *Addison Green Meadows, Inc.* (1972) 8 Ill.App.3d 490 [290 N.E.2d 715], is distinguishable because, there, the Illinois court expressly refused to imply a covenant of good faith and fair dealing in the lease. (290 N.E.2d 715, 719.) As noted above, California implies such a clause in *every* contract.

The judgment is affirmed. The case is remanded with directions that if respondent files an appropriate motion for attorney's fees on appeal within 30 days from the date of the filing of the remittitur, the trial court shall determine a reasonable attorney's fee for the services performed for respondent on appeal and add such fee to the costs as authorized by Civil Code section 1717.

Hanson (P. D.), J., and Martin, J., concurred.